AMERICAN MUTUAL LIABILITY INSURANCE COMPANY *vs.* COMMISSIONER OF LABOR AND INDUSTRIES.

Suffolk. October 8, 1959. — December 17, 1959.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Wages. Labor.*

A practice of an employer of paying employees, who worked from Monday through Friday, on every other Wednesday morning for services performed on the preceding four working days and for services to be performed on the six working days following those four days violated the requirement of G. L. c. 149, § 148, as appearing in St. 1956, c. 259, that "Every person having employees in his service shall pay weekly each such employee the wages earned by him to within six days of the date of said payment if employed for five or six days in the week."

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on February 5, 1959.

The suit was reserved and reported by *Whittemore, J.*

*Charles B. Rugg, (William D. Andrews* with him,) for the plaintiff.

*Leo Sontag,* Assistant Attorney General, *(Pasquale J. Piscitelli* with him,) for the defendant.

WHITTEMORE, J. This suit in equity for a declaratory decree was reserved and reported by a single justice, without decision, on the substitute bill, answer and statement of agreed facts.

The plaintiff asks construction of G. L. c. 149, § 148, as applied to its practice of paying employees on every other

340 Mass. 144 145

American Mutual Liability Ins. Co. *v.* Commissioner of Labor & Industries.

Wednesday, at about 9 A.M., for services performed on the preceding four working days (Thursday, Friday, Monday and Tuesday) and for services to be performed on the next six working days.

General Laws c. 149, § 148, as amended through St. 1956, c. 259, provides in part, "Every person having employees in his service shall pay weekly each such employee the wages earned by him to within six days of the date of said payment if employed for five or six days in the week . . . ." There is a provision that executive, administrative or professional employees may be paid biweekly or semimonthly, but for purposes of this case the parties have agreed that approximately 1,109 of the plaintiff's employees are not within any of these categories.

We rule that the statute calls for weekly paydays and that the plaintiff's practice violates the requirement. The language directs the employer to "pay weekly"; the associated modifying language and the wider context within the statute are confirmatory; such legislative history as there is indicates an intent to require payment weekly; this court has recognized such construction and no case shows the contrary.

The requirement for a weekly payday is confirmed by the context. The immediate qualification is that the weekly payment be of "wages earned by . . . [the employee] to within six days of the date of said payment." This has as its primary purpose, we take it, the limiting of the interval between the completion of a work week and the payday on which the wages earned in that week will be paid and is consistent with a weekly payday. The section authorizes action so that employees of a railroad or parlor or sleeping car corporation may be paid "less frequently than weekly," and that, as stated above, certain employees may "be paid bi-weekly or semi-monthly"; also that agricultural and domestic service employees may be paid monthly. An employee who is a shareholder of a coöperative association is exempted unless "he requests such association to pay him

weekly." Section 150 provides that "An assignment of future wages payable weekly under section one hundred and forty-eight shall not be valid if made to the person from whom such wages are to become due or to any person on his behalf, or if made or procured to be made to another person for the purpose of relieving the employer from the obligation to pay weekly." Section 148 provides, "No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty."

Turning to the legislative history, we note that St. 1879, c. 128, provided that all cities "pay, at intervals not exceeding seven days, all laborers who are employed by them at a rate of wages not exceeding two dollars a day, if such payment shall be demanded." Statute 1886, c. 87, was entitled "An Act to provide for the weekly payment of wages by corporations." It provided that corporations in enumerated categories "pay weekly each and every employee engaged in its business the wages earned by such employee to within six days of the date of said payment . . . ."

On April 15, 1895, the House of Representatives asked the Justices of this court: "Is it within the constitutional power of the Legislature to extend the application of the present law, relative to the weekly payment of wages by corporations, to private individuals and partnerships, as provided in the bill entitled 'An Act relative to the weekly payment of wages,' now pending before the General Court?" *Opinion of the Justices,* 163 Mass. 589. The Justices replied (p. 596), ". . . [W]e cannot say that a statute requiring manufacturers to pay the wages of their employees weekly is not one which the General Court has the constitutional power to pass . . . ." Thereafter the General Court enacted St. 1895, c. 438, entitled "An Act relative to the weekly payment of wages." This extended to certain persons and partnerships St. 1894, c. 508, §§ 51 to 54, that is, the "weekly payment" statute in its then form. The extending statute referred to §§ 51 to 54 as "relative to the weekly payment of wages by corporations."

The General Court, in most of the titles of the many amending enactments[1] since St. 1886, c. 87, has affirmed that the statute deals with the "weekly payment of wages." Marginal subtitles of several amending statutes[2] and of the several codifications[3] refer to "weekly payment" or make equivalent reference and may be taken to reflect the contemporaneous view of what the statute was about.

Doubtless the legislation in its early form was enacted primarily to prevent unreasonable *detention* of wages. See Governor Robinson, address to the Legislature (Legislative Documents, Senate, 1885, No. 1, pp. 37–38; *Commonwealth* v. *New York Cent. & H. R. R.R.* 206 Mass. 417, 423–424 ("prompt payment of their wages"). But it does not follow that a practice which avoids such detention is valid. The cure which the Legislature prescribed for the evil noted was to require regular and frequent payment. The prescribed frequency was "weekly." Payment long in arrears could mean, as the brief for the commissioner notes, dissipation on payday of a large part of the accumulated sums by irresponsible employees, with consequent adverse effect on family and community. The statutory remedy met this possible evil, and it is inconsequential that regular payment in advance was probably unheard of in 1886.

This court, in three decisions of other issues, has described the statute as providing weekly payment. *Mutual Loan Co.* v. *Martell*, 200 Mass. 482, 485 ("They are required by law to be paid weekly . . ."). *Young* v. *Duncan*, 218 Mass. 346, 353 ("the weekly payment law"). *Holcombe* v. *Creamer*, 231 Mass. 99, 104 ("Interference with liberty of contract . . . to the extent of requiring weekly payments of wages").

The plaintiff, relying on the absence of an express prohibition of prepayment, cites *Commonwealth* v. *Dunn*, 170

---

[1] See annotation in Mass. Anno. Laws, c. 149, § 148. The titles of the seven acts, not codifications, which do not refer to "weekly payment" express no inconsistent concept. See note 2.

[2] St. 1902, c. 450. St. 1910, c. 350. St. 1924, c. 145. St. 1925, c. 165. Compare Sts. 1943, c. 378; 1943, c. 563; and 1946, c. 414.

[3] Pub. Sts. c. 28, § 12. St. 1894, c. 508, § 51. R. L. c. 106, § 62. St. 1909, c. 514, § 112. G. L. c. 149, § 148. G. L. (Ter. Ed.) c. 149, § 148.

Mass. 140, where there were exceptions after a verdict of guilty of violation (in the words of the reporter, p. 141) "of the statutes relating to the weekly payment of wages." The complaint alleged neglect to pay between September 1 and September 15 "the wages . . . earned as aforesaid on said first day of September . . . ." The court noted that this might imply that the wages were due on September 15 or between that day and September 1 and not paid when due, but held that the omission of an express allegation to this effect was fatal as the language was consistent with the payment of "the wages earned on the first day of September . . . on or before that day." It is significant for the present purpose that this was not a complaint for failure to pay weekly, and that the allegations as well as the implications mentioned by the court were consistent with a weekly payday. The quoted language, of course, suggests that paying wages for any week in advance, or at least during the week and before it was completed, would be legal, but that is not the issue here. That case does not furnish adequate support for the plaintiff's construction.

The plaintiff relies also on the language in the opinion of Holmes, J., in *Gallagher* v. *Hathaway Mfg. Corp.* 172 Mass. 230, 232–233. In that case there was found to be an implied agreement that the weekly payment of wages to the plaintiff be at the rate which would be due if all cloth woven were of the first quality and that deductions for cloth found to be of second quality should be made from the next week's' wages. The plaintiff contended that such an agreement would violate St. 1894, c. 508, § 51. The court said, "We do not perceive how. . . . She was overpaid one week, and was bound to repay the amount. . . . It surely would not encounter either the words or spirit of the law if an employer should lend his workmen money to be set against his next week's wages." It is not necessary to pause to reconcile this statement with the provision of St. 1894, c. 508, § 52, making invalid assignments to the employing corporation of future wages. It *would* encounter both the letter and the spirit of the law so to lend money to workmen that weekly

paydays were abolished, and nothing in the *Gallagher* decision suggests otherwise.

The absence of a prohibition of prepayment cannot control the intent which we find expressed that there be weekly paydays. We agree with the commissioner that, under the statute, biweekly payments stand in no better case than would payments at longer intervals.

The commissioner's brief concedes that "Many good reasons may today exist for the payment of wages less often than weekly, including the greater financial responsibility of most employers, the payment of family obligations on a monthly basis or better family financial security than existed in years gone by." The brief rightly contends that this is for the Legislature. Such arguments however persuasive, in the absence of any constitutional question, give no support for our saying that the plain requirement of the statute may be disregarded.

A decree is to be entered construing the statute in accordance herewith.

*So ordered.*