COMMONWEALTH *vs.* LESTER E. SAVAGE.

No. 91-P-576.

Middlesex. October 15, 1991. - December 30, 1991.

Present: KASS, JACOBS, & LAURENCE, JJ.

*Wages. Labor*, Failure to pay wages. *Broker*, Real estate. *Contract*, Employment.

General Laws c. 149, § 148, as amended by St. 1943, c. 467, imposing criminal penalties upon employers who fail to make weekly payments of employees' commissions when due, was not applicable to the principal of a real estate brokerage firm who allegedly withheld payment of a portion of the commission which a broker associated with the firm had earned on a certain land transaction where, in the circumstances, the broker's relationship with the firm was that of an independent contractor and not an employee. [715-718]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on April 6, 1988.

On transfer to the jury session of the Framingham Division, the case was tried before *Paul F. Healy, Jr.,* J.

*Robert S. Kutner* for the defendant.

*Elisabeth J. Medvedow*, Assistant Attorney General, for the Commonwealth.

KASS, J. Upon the complaint of a real estate broker who had been associated with his real estate firm, Lester E. Savage was complained of, tried, and convicted of violating G. L. c. 149, § 148, a statute whose general purpose is to assure that employees are paid their wages on a weekly basis. We think the statute was misapplied and that the defendant Savage was entitled to a required finding of not guilty, for which he had timely moved.

For nine years Helen Jean Winchester was associated (that is the word she used on her business card) as a licensed real estate broker with a Lexington real estate firm that did

business under the name Lester E. Savage Real Estate. On the afternoon of November 5, 1987, Winchester gave notice to Lester E. Savage, Jr., a son of the principal, that she was affiliating with another real estate firm effective the next morning. She already had taken the precaution of having some fifteen customers for whose origination she had been responsible withdraw their listings with the Savage firm and transfer them to her new base of operations.

At the time of her leave taking, there was pending a land transaction Winchester had brokered while still on the Savage roster. That deal closed January 4 or 5, 1988, whereupon Winchester received a commission check of $7,375 payable, as was the practice, to Lester E. Savage Real Estate. She delivered the check to the elder Savage and demanded her share of the commission, $4,425. Savage responded that, "We have things to talk about." What was on Savage's mind was that he had, as he saw it, incurred advertising expenses exceeding Winchester's share of the commission on the listings she had taken with her to her new connection. Talk did not bring Savage and Winchester to terms. The latter swore out a complaint claiming violation of G. L. c. 149, § 148, which the government, in a doubtful application of public resources, prosecuted.[1]

Statutes requiring employers to pay wages weekly, on pain of criminal penalty,[2] have a lineage back to St. 1886, c. 87,

---

[1]There are two methods of bringing a complaint for a violation of G. L. c. 149, § 148. *Commonwealth* v. *Northern Telecom, Inc.*, 25 Mass. App. Ct. 255, 257 n.4 (1988). The Department of Labor and Industries may, on its own motion, bring a complaint against an employer pursuant to G. L. c. 149, § 150. Under G. L. c. 149, § 149, an employee can bring a complaint in the District Court in his or her own behalf. *Northern Telecom, Inc.*, 25 Mass. App. Ct. at 257. Where, as here, an employee makes out the complaint, attorneys of the Department of Labor and Industries act as special assistant attorneys general, and handle the prosecution against the employer. *Northern Telecom, Inc.*, 25 Mass. App. Ct. at 258 n.5.

[2]The 1886 statute prescribed a fine of ten dollars for a violation of the statute. Over the years, the penalty has escalated and since the enactment of St. 1987, c. 559, § 29, stands at a fine of not less than $500 nor more than $3,000 or imprisonment of up to two months in a house of correction, or both.

§§ 1, 2.[3] In 1936, in connection with an "Act relative to the weekly payment of wages to employees of certain hospitals" (St. 1936, c. 160), the language of the weekly wage payment statute assumed substantially the form currently appearing as G. L. c. 149, § 148. What is now the third paragraph of § 148 was inserted by St. 1943, c. 467, under the caption: "An Act relative to the weekly payment of commissions due to certain employees." That act provided:

> "This section [referring to § 148] shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee . . . ."

From the caption to that act[4] and from the placement of the provision in the weekly payment statute, one infers a Legislative purpose to assist employees who would ordinarily be paid on a weekly basis, such as retail salespeople, and for whom commissions constitute a significant part of weekly income.

Real estate brokers are not in that category. The transactions are not regular, but episodic; the commissions are often substantial. The distinct and relatively independent status of real estate brokers has been recognized in other statutes: (1) G. L. c. 152, the Workers' Compensation Act, which in § 1(4) (as appearing in St. 1985, c. 572, § 9), excepts from the definition of an employee "(*c*) a salesperson affiliated with a real estate broker pursuant to an agreement which specifically provides for compensation only in the form of commissions earned from the sale or rental of real property"; (2) G. L. c. 151, § 1A (as inserted by St. 1960, c. 813), which provides that overtime pay is not applicable to an

---

[3]A requirement to pay wages on a weekly basis was imposed on cities of the Commonwealth seven years earlier by St. 1879, c. 128.

[4]The title of an act is part of it and is relevant as a guide to legislative intent. *Commonwealth* v. *Jarrett*, 359 Mass. 491, 495 n.5 (1971). *American Family Life Assur. Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474 (1983). *Hemman* v. *Harvard Community Health Plan, Inc.*, 18 Mass. App. Ct. 70, 73 (1984).

"outside salesman or outside buyer"; (3) G. L. c. 151A, having to do with unemployment compensation, which in § 6(*p*) provides that the term "employment" does not include services of a licensed real estate broker if paid solely by commission.

Even if the purpose and reach of § 148 were not limited as we have described, the manner in which Winchester worked and was compensated bespeaks a status other than that of an employee, as that word, when not otherwise defined, is generally understood. Whether a person is an employee or an independent contractor involves, in the first instance, an inquiry into the right of the supposed employer to control the work activities of the employee. *Khoury* v. *Edison Elec. Illuminating Co.*, 265 Mass. 236, 238-239 (1928). *Silvia* v. *Woodhouse*, 356 Mass. 119, 124 (1969). See *Dimmitt-Rickhoff-Bayer Real Estate Co.* v. *Finnegan*, 179 F.2d 882, 886-888 (8th Cir. 1950); *NLRB* v. *Maine Caterers, Inc.*, 654 F.2d 131, 132-133 (1st Cir. 1981); Restatement (Second) of Agency § 220(2) (1957).

Although she operated under the banner of the Savage firm, Winchester made her own hours. Her business productivity, and, hence, her earnings, were functions of how much she chose to work. Winchester maintained an office in her home, for which she bought, from her own pocket, an IBM printer, a copying machine, and a two-line telephone system. She obtained and paid for her own office materials, paid for her broker's license, her dues in real estate associations, her entertainment expenses, her telephone charges, and the cost of operating her car.

Winchester received no base salary from the Savage firm. Every dollar she earned came from broker's commissions. From commission checks Savage withheld neither taxes nor social security. There were no vacation or sick pay benefits. At the end of the calendar year, Savage furnished to the Internal Revenue Service a Form 1099, entitled "Statements for Recipients of Nonemployee Compensation." For her part, Winchester reported her income as a broker under Schedule C, business and professional income, of the Form 1040

Federal income tax return. She set up and funded her own Keogh pension plan. See 26 U.S.C. § 401(c) (1988).

There were not prescribed hours at which Winchester had to be on duty at the Savage office, nor did she have hours scheduled by Savage to answer the telephone. In this regard, Winchester was more independent of the Savage office than during the years when she first was breaking in as a real estate broker with Savage. She was not required to attend sales meetings nor to discuss with Savage all her listings. Savage did not supervise the manner and times when Winchester showed properties to customers nor how she prepared documents — e.g., offers, purchase and sale agreements (on standard forms), or listing sheets. To be sure, Winchester was obliged to cover the office from time to time when Savage and his family were away, for example, on vacation, but that is consistent with collaborative arrangements made among vocational peers and has aspects of mutual benefit for the participants in the common enterprise. Indicia of employee or independent status need not be 100 percent pure and, ordinarily, are not. Courts have determined that a person is an independent contractor even when subject to minor elements of control. See *Dimmitt-Rickhoff-Bayer Real Estate Co.* v. *Finnegan*, 179 F.2d at 886-887. The latter case is particularly in point, as it involved a determination that real estate salesmen working on a commission basis and on relatively independent schedules were not employees within the meaning of the Internal Revenue Code.

In the instant case, the factors to be considered line up persuasively for the conclusion that Winchester was an independent contractor in relation to the Savage office. Compare our recent opinion in *Benoit* v. *Landry, Lyons & Whyte Co.*, *post* 948 (1991), in which we did not decide whether the real estate salesman was an employee of the defendant broker but in which we remarked upon the distinction between a licensed real estate broker, who could work independently, and a licensed real estate salesman who, under G. L. c. 112, § 87RR, could not conduct his own real estate business nor act except as a representative of a real estate broker.

The motion for a required finding of not guilty should have been allowed. The jury verdict is set aside, the judgment of conviction is reversed, and a judgment of not guilty shall be entered on behalf of the defendant.

*So ordered.*