Sosman, J.
Plaintiff Christian Klint has brought the present action seeking to recover commissions allegedly owed to him by his former employer, defendant J&J Associates, Inc. (“J&J”). Iri Count II, he seeks to recover the alleged commissions plus treble damages and attorneys fees for an alleged violation of G.L.c. 149, §148. Defendants have moved for partial summary judgment on Count II on the ground that the alleged commissions are not “definitely determined” or “due and payable” such that failure to pay them would be any violation of §148. For the following reasons, defendants’ motion for partial summary judgment is ALLOWED.
Facts
Defendant J&J is a manufacturers’ sales representative for producers of computer storage equipment. Beginning in 1984, Klint was employed by J&J as a salesman. J&J itself was paid by commission on equipment that it sold for the various manufacturers. Klint received a base salary, plus a percentage of the commissions earned by J&J.
- In 1988, this arrangement was reduced to a written employment agreement that set forth Klint’s commission rate. For sales made in Klint’s sales territory, that rate gave Klint a percentage of the commissions paid to J&J, with the percentage increasing as the total amount of commissions to J&J rose. The agreement defined such commissions on which a percentage would be owed to Klint as a commission “actually received by the Company as a result of the sale.” Employment Agreement, Section 1(c) and (d).
The agreement also specified the time frame on which Klint’s percentage commission would be calculated and paid, At the end of each month, J&J was to pay to Klint “the estimated amount” of his percentage *154 commissions earned during that month. At the end of each year, by the following January 15, J&J was to calculate the precise amount of percentage commissions earned during the prior year and then either pay Klint any additional amounts owed or, if the estimates turned out to have overpaid Klint, make arrangements with respect to Klint’s repayment of the excess amount. If in any year Klint was employed for less than the full year, the agreement specified that his percentage commission would be based on commissions received by J&J up through the termination date.
The written agreement also included confidentiality and noncompete provisions. The noncompetition provisions prevented Klint from engaging in various competitive activities while he was employed at J&J and for a period of one year after his termination. The agreement provided that it could be terminated by either side, with or without cause, after two weeks’ written notice.
Klint alleges that, in 1993 and 1994, J&J did not pay him the monthly estimated commissions called for under the agreement but rather postponed commission payments until the end of the year and into the following year. He alleges that his 1993 percentages were not fully paid until April 1994 and that his 1994 percentages were not paid in full until March 1995.
Allegedly on account of J&J’s failure to make timely payments of the monthly estimates, Klint gave written notice to J&J on Februaxy 13, 1995 advising that, in his view, J&J was in material breach of the agreement and that that breach “has terminated any obligations that I have under this agreement.” Klint did not resign from J&J, but rather stated that “any further employment I may perform for J&J Associates from and after this notice or any required notice period shall be solely as an employee at will.” He further specified that no agreement or modification of the prior agreement would be binding unless in writing signed by him and that payment of any compensation due him under the former contract would not be a “waiver” of the termination of that contract as announced in his letter.
On February 28, 1995, J&J sent Klint its written response to his notice. J&J expressed the view that it had not committed any material breach of the agreement, that all amounts owed to Klint had been paid, and that payment had been handled in a manner that the parties had agreed to and followed for several years. J&J therefore asserted in its letter that the agreement (and specifically its noncompetition provisions) remained in full force and effect.[1] At the end of the letter, J&J had placed a signature block and asked Klint to sign acknowledging that the agreement was in full force and effect, that the procedures used over the past years for payment of salary and commissions were satisfactory, and that use of those procedures would not be a breach of the parties’ written agreement. Klint did not provide J&J with any such signed acknowledgment or otherwise retract the position he had taken in his February 13 letter.
Klint continued to work at J&J after this exchange of letters and continued to receive an amount consistent with his (former) base salary. He received the final amounts payable for his 1994 commission percentages by the end of March 1995.
In July 1995, Trimm Technologies, Inc. (“Trimm”), J&J’s largest customer, announced that it would be canceling its sales agreement with J&J. Although the sales agreement allowed Trimm to cancel on 30 days notice, Trimm told J&J that it would continue to use J&J’s services for an additional year. Most of Klint’s work (and most of his commissions) came from the Trimm account. Klint continued to service the Trimm account after the termination of the sales agreement.
Klint alleges that the amount of his 1995 percentage commissions, if calculated based on the (former) employment agreement, totaled $146,500. On December 30, 1995, J&J paid Klint $20,000 in commissions. In January 1996, J&J told Klint that it wanted to reduce his commission rate to a flat 30% and that it wanted to set off $15,000, an amount by which he had allegedly been overpaid during the preceding five years. Klint rejected this proposal. J&J terminated Klint’s employment on March 18, 1996. Klint alleges that he is still owed $126,500 in commissions for 1995, plus pro-rated commissions of $48,401 for product shipped in the first four months of 1996.
Klint filed the present action seeking to recover those commissions from J&J on theories of promissory estoppel, quantum meruit, money had and received, and violation of G.L.c. 149, §148. Consistent with his theory that J&J had breached the earlier written contract and that his letter of February 13, 1995 had validly terminated that contract, Klint’s theories of recovery do not include any count for breach of the parties’ written employment agreement.
J&J filed an answer and counterclaim, alleging that Klint had violated the agreement’s confidentiality and noncompetition provisions in that Klint had allegedly serviced J&J clients on his own and taken payment from those clients for himself while he was still employed at J&J in 1995 and that, within less than a year after his termination, Klint had founded his own company in competition with J&J.
Discussion
G.L.c. 149, §148 sets specific time limits within which employers must pay wages to employees. The law is intended to ensure the prompt and regular payment of wages and to prevent the unreasonable detention of wages that are owed to employees. American Liberty Mutual Insurance Co. v. Commissioner of Labor & Industries, 340 Mass. 144, 147 (1959). In the event of a violation of §148, the attorney general may pursue a criminal complaint or the individual unpaid employee may, after notification to the attorney gen *155 eral, file his own civil action to recover the amounts owed plus treble damages and attorneys fees. G.L.c. 149, §150.
With regard to payment of commissions, §148 provides that “[t]his section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee.” Thus, once the amount of commissions owed has been “definitely determined” and once they are due to be paid pursuant to the parties’ agreement or arrangement, failure to pay them promptly is a violation of §148 and recovery for said violation may be had under §150.[2]
Klint contends that the amount of his commissions owed for 1995 and 1996 can be and have been calculated in accordance with the parties’ written employment agreement and that, under that agreement, they are long overdue. He thus contends that they have been “definitely determined,” that they are “due and payable” to him, and that J&J’s failure to pay him those commissions is a violation of §148 for which he may pursue his remedies under §150.
Without needing to address any technical questions with regard to the calculations put forward by Klint,[3] there is a fundamental flaw in his theory that the commissions are already “definitely determined” or even that they are “due and payable." From February 1995 up through the present, Klint has steadfastly maintained that his former employment agreement was no longer in effect. His letter of February 13, 1995 terminated that contract, as he had the right to do (with or without cause) under Section 6 thereof (see f.n. 1, supra)[4] Yet it is that very contract that he relies on to calculate the commissions he is allegedly owed. Klint can not simultaneously claim that the contract was not in effect but that sums that he would be entitled to if the contract were in effect are “definitely determined” and “due and payable.” In the absence of that contract, the amount now owed to Klint (if any) is totally uncertain. He may, as he has done, pursue a claim for quantum meruit or unjust enrichment in the absence of a binding contract between the parties, but such claims require a determination of the fair value of the services he rendered and/or the amount by which J&J has actually been “enriched" by his services. While prior or related contractual arrangements can provide some evidence of the value of those services, the actual value of the services may be different (either higher or lower) than that set in an earlier, terminated contract. Klint may certainly argue that the value of the services he provided to J&J after termination of the contract is identical to the former contract price, but it is not “definitely determined” that that is their value. Determination of the fair value of Klint’s services in 1995 and 1996, above his salary and the $20,000 in commissions he did receive, must await the outcome at trial. Their fair value is not presently, nor has it been at any point in the past, “definitely determined.”
Klint argues that J&J should be held to the contract amount because J&J has taken the position that the contract was still in effect. J&J’s own contention that the contract remained in effect does not change the fact that the status of that contract is itself disputed and uncertain.[5] Indeed, when J&J took the position that the contract was in effect and asked for Klint’s confirmation of same, Klint refused to provide it. Klint can not complain of J&J’s failure to pay him in accordance with a contract that Klint himself says was not in effect, and J&J’s contention that the contract was still in effect does not make it “definitely determined” that amounts under that contract are owed. It remains to be decided whether the contract was in fact in effect such that J&J must pay Klint in accordance with its terms, or whether the contract was not in effect, in which case J&J would owe Klint an as yet undetermined amount for the value of his services. Where Klint’s actions in terminating and disavowing the contract has created uncertainty about how much (if anything) he is owed, there is no violation of §148 in J&J’s failure to pay him the amounts that allegedly would have been owed him if the contract were still in effect.
As a fall-back position, Klint argues that the contract was still in effect for January 1995 and that the failure to pay him the monthly estimated commission at the end of January was a violation of §148. This theory is not articulated in his complaint, but was raised at oral argument on the motion. Assuming (without deciding) that such a theory should be read into the complaint or allowed to be added by way of amendment to the complaint, the claim is also fatally flawed. Under the contract, what was to be paid at the end of each month was an “estimated amount" of percentage commissions for that month. Nowhere did the contract specify how that “estimated amount” was to be calculated. Was it an “estimate” based on the amount of commissions J&J expected to receive for that month’s sales? Was it an “estimate” of that employee’s share of commission payments J&J had actually received that month? Was it some other approach to estimating that month’s worth of Klint’s anticipated percentage commissions? The contract did specify that this “estimated amount,” however it was to be calculated or arrived at, was to be paid on a monthly basis. Failure to make the “estimate” and pay it on a monthly basis would be a breach of the contract. However, that unspecified “estimate,” and particularly where that “estimated amount” was itself made subject to offset when the actual amount owed was later calculated, is not an amount that is “definitely determined.” Under the contract, the amounts owed to Klint as percentage commissions were not “definitely deter *156 mined" until the full year’s figures were in and the final tally made. Estimated advances towards that amount were not themselves “definitely determined” such that failure to pay them would violate §148.
ORDER
For the foregoing reasons, defendants’ motion for partial summary judgment is ALLOWED as to Count II of plaintiffs complaint.

Inasmuch as the contract could be terminated by either side with or without cause upon two weeks’ written notice, Klint’s right to terminate the agreement was not contingent upon any material breach by J&J. J&J’s position that the contract was still in force as long as J&J had not materially breached it appears legally untenable. Klint’s February 13, 1995 was an unequivocal notice of termination and made clear that any work he did for J&J after “this notice or any required notice period” would be as an employee at will. Under Section 6 of the agreement, the agreement thus terminated on February 27, 1995 whether it had been breached by J&J or not.

The reference to applying §148 to commissions “so far as apt” appears to refer to some flexibility of application in the specific time frames that are set forth for “wages.” The requirements for prompt payment of wages include both a specific frequency of wage payments and a requirement that they be paid within a certain number of days of a particular pay period. Some of these calculations make no sense in the context of commissions, which would not normally be paid on such a frequent basis and would not normally be due within a few days of the end of a “pay period.” What is apparently called for in the case of commissions is prompt payment once they are calculated, due and owing, not necessarily payment within a specific number of days.

Klint’s commissions were not based on sales made, or even on sales for which the manufacturer had received its payment, but on commissions “actually received” by J&J itself. Klint’s complaint has based the claim for 1996 commissions on the amount of product shipped, which is not the measure of commissions under the parties’ (former) agreement. Complaint, ¶44.^6 complaint also alleges that Trimm, the customer for whom Klint did almost all of his work, still owes significant sums to J&J for services rendered under the now terminated sales agreement. Indeed, based on the fact that Trimm had still not paid commissions owed to J&J under that agreement, Klint’s complaint contains a count to reach and apply the funds Trimm still owes to J&J. J&J has now filed a third-party complaint against Trimm seeking to recover those very commissions for sales in 1995 and 1996, and Trimm’s answer to that third-party complaint asserts that it does not owe any further commissions to J&J for that time period. By definition under Klint’s employment agreement, Klint was not entitled to commissions on Trimm sales for which J&J itself had not yet received its payment from Trimm. The phase-out of the Trimm sales agreement, and ongoing disputes about what Trimm does or does not owe for sales made either under that agreement or subsequent to its formal cancellation, would appear to cloud (if not eliminate) much of Klint’s own commission claim. Against that backdrop, it is hard to view the calculation of his commissions as “definitely determined,” and, to the extent that J&J has not been paid its commissions, Klint’s corresponding percentage is not yet “due and payable.”

 Klint’s termination of the contract in February 1995 would mean that the one-year noncompetition provision expired in February 1996, thus leaving him free to compete with J&J after his employment was terminated in March 1996.

 Although it appears to the court that Klint’s termination of the contract by letter dated Februaiy 13, 1995 is a valid termination under Section 6, the parties have not briefed the issue and, until such time as J&J’s contention is resolved, the status of that employment agreement remains undecided.