Gary CUMPATA, Plaintiff,

v.

**BLUE CROSS BLUE SHIELD OF MASSACHUSETTS, INC., Defendant.**

**No. Civ.A. 99–10942–WGY.**

United States District Court, D. Massachusetts.

Sept. 13, 2000.

Alan K. Posner, Rubin & Rudman, Boston, MA, Paul G. Gitlin, Rubin and Rudman, Boston, MA, Catherine M. Campbell, Feinberg, Charnas & Schwartz, Boston, MA, for Gary Cumpata, plaintiff.

Joseph D. Halpern, Blue Cross and Blue Shield of Mass., Law Department, Boston, MA, for Blue Cross and Blue Shield of Mass, Inc., defendant.

*MEMORANDUM*

YOUNG, Chief Judge.

## INTRODUCTION

This case involves a dispute about the amount of a commission owed the plaintiff, Gary Cumpata ("Cumpata"). Cumpata alleges that the defendant, Blue Cross Blue Shield of Massachusetts ("Blue Cross") failed to pay him a commission in violation of Mass.Gen.Laws ch. 149, §§ 148 and 150 (Count I) and in breach of the incentive Compensation Plan (the "Plan") (Count II). In response, Blue Cross has filed this Motion for Summary Judgment claiming that, as matter of law, the Wage Act does not apply to Cumpata's commission and that Blue Cross did not breach the Plan.

On July 20, 2000, the Court heard oral argument. From the bench, the Court granted Blue Cross' motion for summary judgment as to the Wage Act.[1] The Court's reasoning is as follows.

## FACTUAL BACKGROUND

The parties do not dispute the following facts. Cumpata was hired by Blue Cross in 1993 as Director of Consultant Relations. Eventually, Cumpata became involved in sales, rising to the level of Senior Sales Executive. As part of the New Sales Division,[2] Cumpata was eligible to participate in an Incentive Compensation Plan. The espoused purpose of the plan was "[t]o reward sales executives [for] meeting or exceeding their individual sales forecasts." Def.'s Ex. A, Dep. of Lada, Ex. 1. Cumpata was quite successful in sales, and in 1997 he was one of the ten most highly compensated Blue Cross employees. *See* Def.'s Mem. at 2.

In 1995 and 1996 Cumpata was involved in a significant sale of health insurance to an employer group, BTR, Inc. ("BTR"). BTR was an existing Blue Cross customer

---

1. Because genuine issues of material fact plague the contract claim, summary judgment as to that claim was denied.

2. The New Sales Division, of which Cumpata was a member, is distinct from the Retention Sales Division. As the name suggests, the Retention Sales Division handled sales to existing Blue Cross accounts. In contrast, the New Sales Division sought to sell to companies that had no pre-existing relationship with Blue Cross.

using Blue Cross coverage for its Massachusetts employees. For over six years the account was handled by Bob Lada ("Lada") who worked in the Retention Sales Division. In 1995, BTR sent Blue Cross a proposal seeking a single source of health insurance for its employees nationwide. While it is undisputed that Lada handled the existing BTR account, there is some confusion whether Cumpata or Lada was first contacted about BTR's intent to expand.

The parties acknowledge that Lada and Cumpata both worked on the sale. In addition, Lada and Cumpata agreed to split credit for the new subscriber contract on a 60/40 basis with Lada to receive sixty percent credit and Cumpata to receive forty percent. It does not appear that the agreement was memorialized in writing and signed by both parties as required by the Plan. Cumpata does present, however, two memoranda written by Lada to Cumpata expressing the agreement. In addition, there is a dispute whether the agreed split was approved by the Division Vice President and Human Resources as required by the Plan. See Am.Compl.Ex. A at 4 ("Any compensation or incentive arrangements different from those outlined in this plan (splits, multi-year sales, etc.) must be documented in writing, signed by the plan participants involved, and approved by the Division Vice President and Human Resources."). Cumpata also suggests that, in practice, prior approval was not required. See Am.Compl. ¶ 10.

After the sale was complete, Blue Cross management created a split different from the one agreed to by Lada and Cumpata—

Lada received eighty percent credit, while Cumpata received twenty percent credit. The amount due Cumpata based on the split, approximately $87,000, was paid in May 1996. Cumpata made several attempts to obtain additional compensation for the sale without success. See id. ¶¶ 18–25. He tendered his resignation in February 1999, and filed this action in May of that year. It is not clear from the record whether his resignation was a result of the alleged unpaid commission.

## DISCUSSION

### A. Relevant Standard

Summary judgment is appropriate if, after reviewing the facts in the light most favorable to the nonmoving part, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

### B. Count I: The Wage Act

In relevant part the Weekly Wage Act ("Wage Act") applies "so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable...." Mass.Gen.Laws ch. 149, § 148.[3] An aggrieved party may sue for injunctive relief and any damages incurred, including treble damages for any loss of wages or other benefits. See Mass.Gen.Laws ch. 149, § 150. A prevailing employee also is entitled to an award of costs and attorney fees.[4] See id.

---

**3.** Section 148 directs the complainant to section 150 which provides for the procedure for bringing claims, the statute of limitations, and damages. See Mass.Gen.Laws ch. 149, §§ 148, 150. Cumpata filed a complaint with the Attorney General as required by statute and received permission to file this civil action. The complaint was filed within the prescribed statute of limitations.

**4.** The possible damages in this case are quite substantial. Cumpata makes two alternative

arguments regarding the amount owed him by Blue Cross. It is established that Cumpata was paid a twenty percent commission, or $87,275, for his involvement in the BTR sale. First, he argues that he is entitled to 100 percent of the commission, or $436,375 less the $87,275. In the alternative, Cumpata argues that he is entitled to 40 percent of the commission or an additional $87,275. Thus, treble damages could exceed one million dollars.

Blue Cross raises two objections to the application of the Wage Act to these facts. First, it argues that, in this context, the commission is not covered by the statute. *See* Def.'s Mem. at 13–14. Moreover, even if the disputed commission is encompassed by the statute, the commission has not been "definitely determined" as required by the statute. *See id.* at 14. As a threshold issue, the Court must examine the scope and purpose of the Wage Act as well as the relevant language. A review of the statute and case law—which is sparse—supports Blue Cross' contention.

■ The Supreme Judicial Court, in its oft-cited decision *American Mutual Liability Insurance Co. v. Commissioner of Labor and Industries*, 340 Mass. 144, 163 N.E.2d 19 (1959), concluded that the Legislature enacted section 148 to limit "the interval between the completion of a work week and the payday on which the wages earned in that week will be paid." *Id.* at 145, 163 N.E.2d 19. The statute was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages. *See id.* at 147, 163 N.E.2d 19.

Following *American Mutual*, the Massachusetts Appeals Court has construed the scope of the Wage Act narrowly:

> From the caption to [the] act and from the placement of the provision in the weekly payment statute, one infers a Legislative purpose to assist employees who would ordinarily be paid on a weekly basis, such as retail salespeople, and for whom commissions constitute a significant part of weekly income.

*Commonwealth v. Savage*, 31 Mass.App. Ct. 714, 716, 583 N.E.2d 276 (1991) (footnote omitted); *see also Boston Police Patrolmen's Ass'n, Inc. v. City of Boston*, No. 96–6222E, 1999 WL 1260164, *5 (Mass.Su-

per. Nov.16, 1999) (Garsh, J.) (stating "[s]ince the statute's enactment in 1886, its many amendments make clear that it deals with the weekly payment of wages").

In *Baptista v. Abbey Healthcare Group, Inc.*, No. 95–10125, slip-op (D.Mass. Apr. 10, 1996), Judge Stearns took a similar position. After reviewing the case law, he concluded that "the only impression that can possibly be derived from [the Wage Act], is that its intent is to protect laborers and casual wage earners who might otherwise be vulnerable to employer intimidation." *Id.* at 8. While he acknowledged that the Supreme Court had applied the statute to corporate executives as well as to lower level employees, he noted that "its holding is limited to the payment of ordinary wages and wage equivalents, specifically accrued vacation pay and sick leave." *Id.* (citing *Massachusetts v. Morash*, 490 U.S. 107, 117, 109 S.Ct. 1668, 104 L.Ed.2d 98 [1989]).[5] In contrast, Baptista was attempting to obtain payment for stock options, and Judge Stearns ruled that "[i]n this case, there is no reason to extend the protections of a wage earner's statute to cover bonuses potentially owing to highly paid executives. . . ." *Id.* at 9.

Finally, a recent decision from the Superior Court ruled that irregular and substantial compensation, like the commission sought by Cumpata, was not afforded the protection of the Wage Act. *See Dennis v. Jager, Smith & Stetler, P.C.*, No. 984974G, 2000 WL 782946, at *1 (Mass.Super. Apr.10, 2000) (Ball, J.). The court distinguished between "wages, which include assured compensation and compensation equivalents such as accrued vacation pay and sick leave, from compensation 'triggered by contingencies' and thus outside the scope of the Wage Act." *Id.* (quoting *Baptista*, slip-op at 8–9). Relying on *Savage*, the Superior Court limited commissions to those which "constitute a signifi-

---

5. It should be noted that *Morash* was not interpreting the state statute; rather it was determining whether that statute, with regard to unpaid vacation time, was pre-empted by

ERISA. *See Morash*, 490 U.S. at 110–12, 109 S.Ct. 1668. The Supreme Court concluded that, on the facts before it, it was not. *See id.* at 112–21, 109 S.Ct. 1668.

cant part of weekly income." *Id.* (citing *Savage*, 31 Mass.App.Ct. at 716, 583 N.E.2d 276).

■ Here, it is undisputed that the disputed commission was above and beyond Cumpata's base salary. Indeed, it was the topic of a separate and distinct contract referred to as the "1995 Sales Incentive Plan." Involvement in the Plan was voluntary and additional compensation was contingent on exceeding sales quotas. Commissions were calculated on a quarterly basis, except for commissions based on "profitability" which were computed at the end of the Plan year. The commissions in question appear to be "compensation 'triggered by contingencies' and thus outside the scope of the Wage Act." *Id.* (citation omitted). Moreover, there is no evidence that the Legislature intended to provide treble damages and attorneys fees and costs to professionals enforcing their asserted contract rights. Thus, the compensation in question falls outside the protection of the Wage Act.

■ Blue Cross offers a second hook on which to hang summary judgment. The Wage Act states that it applies to commissions "so far as apt" once they are "definitely determined" and "due and payable." Mass.Gen.Laws ch. 149, § 148. Blue Cross contends that nothing has been "definitely determined." *See* Def.'s Mem. at 14. Indeed, according to Blue Cross, the very fact that Cumpata makes alternative arguments on how much is owed supports its argument that his commission is not "definitely determined." *See id.*

While the Court does not agree that Cumpata is precluded from making alternative arguments, there is a certain logic to Blue Cross' assertion. Cumpata's commission is based on a written contract. Moreover, Cumpata relies on the existence of certain policies to support his claims. The interpretation of that contract and the verity of the policies is very much in dispute. Determination of the remaining commission owed Cumpata, if any, must await the outcome of trial. *See Klint v. J & J Assocs., Inc.*, No. 97–0251, 1998 WL 1181125, at *3 (Mass.Super. Sept.3, 1998) (Sosman, J.) (the existence of contract prevents commission from being "definitely determined" pursuant to Wage Act).

While the argument is attractive on the surface, it also holds the potential for abuse. Employers, seeking to avoid the treble damages imposed by the Wage Act, need only raise a contractual question to remove themselves from its sweep. This outcome defeats the policy supporting the Wage Act. The Wage Act is meant to protect employees from the dictates and whims of shrewd employers. The interpretation proffered by Blue Cross potentially removes certain employees from the protection of the Wage Act. This Court is unwilling to give the statute's language such a broad reading.[6]

The narrow judicial construction given the Wage Act by the Massachusetts courts provides ample support for this Court's conclusion that the commission is not within the scope of the statute. Accordingly, the Court granted partial summary judgment as to Cumpata's Wage Act claim [docket no. 27].

---

6. Because the Court has determined that the commission sought by Cumpata is not covered by the Wage Act, it is here unnecessary to decide whether the commission is "definitely determined" as required by the statute and argued by Blue Cross. *See* Mass.Gen. Laws ch. 149, § 148.