Muse, J.
In this action, plaintiff, Randall J. Sword (“Sword”), seeks to recover from defendant, Biofertec, Ltd. (“Biofertec”), wages and salary earned. Sword claims that his earned compensation was not paid in violation of G.L.c. 149, §§148, 150, and in breach of a written employment contract between the parties. Sword moves for partial summary judgment pursuant to Mass.R.Civ.P. 56, and final judgment pursuant to Mass.R.Civ.P. 54(b) on Count I of his complaint (violation of the Wage Protection Act (the “Act”) under G.L.c. 149, §§148 and 150). Biofertec opposes Sword’s summary judgment motion and moves in a cross motion for summary judgment on Count I of Sword’s complaint. For the reasons stated below, Sword’s motion for partial summary judgment on Count I is ALLOWED and Biofertec’s cross motion for summary judgment on Count I is DENIED.[1]
In Biofertec’s Answer, it makes eight counterclaims against Sword. Sword moves for summary judgment on two counts of the counterclaims, CountV (violation of G.L.c. 93A) and Count VII (alleged failure to repay a corporate loan). For the reasons set forth below, Sword’s motion for summary judgment is ALLOWED with regard to the violation of G.L.c. 93A, and DENIED with regard to the repayment of loans.
The two counts that are ripe for discussion by this Court are the claim for wages under the Act, and the claim that Sword violated G.L.c. 93A.
FACTUAL BACKGROUND
The undisputed facts, as determined from the record, are as follows. In early December of 1999, Sword and Biofertec entered into a valid, enforceable employment agreement for one year.[2] The employment agreement between Sword and Biofertec states in relevant part under Section 1.3 Base Salary: “(a)s soon as is practical, as determined by the Board of Directors, following the execution of this Agreement, the Company shall pay the Executive at an annual rate equal to $125,000.00 payable in accordance with the normal payroll practices of the Company for its executives.” In addition, an email was sent to Sword from Jo Ann Jorge, a member of Biofertec’s Board of Directors, which stated that “the Company will begin paying the salary as soon as there are sufficient funds and will make every attempt to pay whatever amount it can prior to the receipt of funds sufficient to pay full salary . . . The only event I can forsee [sic] that would preclude full payment of accruals is if aventure capitalist, who controls all disbursements of their investment, refuses to pay debts outstanding as of the day of their investment.”
As of May 4, 2000, Sword received $17,696.00 in salary notwithstanding Biofertec’s failure to withhold any federal or state tax deductions. Sword worked for Biofertec from December 1999 to June 2000. After Sword’s resignation, he requested Biofertec to advise him when money owed to him would be paid. Biofertec has not made any payments to Sword since May 4, 2000.[3]
DISCUSSION
Summary judgment is appropriate when there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). A party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. See Community Nat’l Bank v. Dawes, 369 Mass. 550, 554 (1976). In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party. See G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991).
Sword moved for summary judgment against Biofertec on Count I arguing that Sword’s salary falls within the Wage Protection Act, G.L.c. 149, §148, 150, and thus, Sword is entitled to the remainder of his salary that was not paid.[4] Sword argues both that the Wage Protection Act encompasses the wages of highly paid individuals and that the salary Sword earned constitutes “wages” under the Act. Biofertec disputes this argument and filed a cross motion for summary judgment alleging that Sword could not recover under the Wage Protection Act because his salary was contingent and the Act does not apply to such salaries. Thus, the questions raised by both motions for summary judgment are (1) whether Sword was an employee entitled to the protections of the Wage Act; and (2) whether Sword’s compensation from Biofertec constitutes wages under the Wage Act.
The Wage Protection Act Applies to Highly Paid Individuals
General Laws c. 149, §148 states that: any “person having employees in his service” must pay “each such employee the wages earned by him” within a specified amount of time. The statute itself specifically allows “employees engaged in a bona fide executive, administrative or professional capacity” to be paid monthly at their option and explicitly defines salaried employee to include “any employee whose remuneration is on a *490 weekly, bi-weekly, semi-monthly, monthly or annual basis ...” G.L.c. 149, §148. Sword fits squarely within this definition as he is “any employee” who received remuneration on an “annual basis.” In addition, under G.L.c. 149, §148B, specific exemptions from the definition of salaried employee are given for individuals performing services out of the control of the employer, provided that the services are outside the ordinary course of business and the individual is engaged in that service profession. The court finds that the text of the Wage Protection Act thus does not specifically exclude the salaries of highly paid individuals from the protections of the Act.
In a decision that supports the outcome of this case, the United States Supreme Court analyzed the interplay between ERISA and G.L.c. 149. In Morash, the Court found that payments of unused vacation time to high level bank executives were allowed under G.L.c. 149, §148, and were not part of an employee welfare benefit plan to be preempted by ERISA. See Massachusetts v. Morash, 490 U.S. 107, 109 (1989). Based on that decision, this Court finds it clear that a highly paid corporate executive like Sword, may bring an action under G.L.c. 149, §148 so long as he is seeking only payment of ordinary wages or wage equivalents.
Sword’s Compensation from Biofertec Constitutes Wages Under the Wage Protection Act
Sword alleges that the payment he seeks constitutes a wage under the Act. The definition of wages is “payment for labor or services, usually based on time worked or quantity produced.” Black’s Law Dictionary 1573 (17th ed. 1999). General Laws c. 149, §148, states, the “word ‘wages’ shall include any holiday or vacation payments due an employee under an oral or written agreement.” There is no specific reference to base salary. Thus, under the ordinary meaning of the word “wages” in the Act, the Court finds that the base salary of an individual falls within the Act’s definition of wages.
The employment agreement between Sword and Biofertec, under Section 1.3 Base Salary, provides Sword with an annual base salary of $125,000.00. Although the Court recognizes that there were some perfunctory and possibly substantial contingencies for the payment of the salary to Sword, the Court finds that the $125,000.00 integrated into the agreement is a base salary earned by Sword, and, thus, a wage under the Act.
Biofertec argues that Sword’s salary is contingent and cites a number of cases for the proposition that “contingent?” or “deferred” compensation does not fall within the Act. In Huebsch, the plaintiff earned a guaranteed first year salary of $42,500.00 and sought an additional salary which was contingent upon working more than 100 days. See Huebsch v. Katahdin Industries, Inc., 13 Mass. L. Rptr. 180, 2001 Mass.Super. WL 716884 *3 (April 24, 2001) (Kottmeyer, J.). Finding that Huebsch worked only 90 days, the Court decided that his salary was “a substantial and episodic payment subject to a contingency that Huebsch had not satisfied,” therefore, payment was not required. Id., relying on Commonwealth v. Savage, 31 Mass.App.Ct. 714, 716 (1991) (a real estate agent’s commissions did not constitute wages under the Act because “the transactions [were] not regular, but episodic,” and, the agent received no base salary, made her own hours and paid for her own. office supplies). The salaries in both Huebsch and Savage were contingent because they were based on productivity. Neither individual tried to recover a wage promised to them as base salaiy. Sword’s salaiy of $125,000.00 was specifically endorsed as a base salary which the Court finds falls within the ordinary meaning of the word “wages.”
Biofertec further argues that Sword’s compensation was contingent by citing Cumpata v. Blue Cross Blue Shield of Massachusetts, Inc., 113 F.Sup.2d 164, 168 (D.Mass. 2000). In contrast to the present case, the Court found that the commissions for the sale of insurance policies, which were above and beyond his base salary, were not wages within the Act because the commission was triggered by the contingency of sales. Id.
Biofertec also argues that bonuses received by high salaried employees are not covered under the Act. In Baptista, the Court held that the stock benefits promised to two former executives were not within the Act because the Act does not apply to “bonuses potentially owing to highly paid executives, who [are] confident enough to resign their employment if their demands for accelerated (and contingent) stock options are not met.” Baptista v. Abbey Healthcare Group, Inc., 1996 WL 33340740 *4 (D.Mass. 1996). Again, these cases discuss compensation above and beyond base salary to find that commissions and bonuses do not fall within the Act. However, had these employees sued for their base salaries, nothing in the reasoning of the Courts imply that the compensation would not have been considered a wage under the Act.
The possibility of the contingencies occurring do not change the nature of the agreement between the parties. Biofertec agreed to pay Sword a wage of $125,000.00 for one year of work — an agreement was drawn up solidifying this understanding. A salary funded by venture capitalists does not alter the nature of Sword’s compensation as something other than a base salary. Thus, this Court finds that Sword’s salary falls within the Wage Protection Act because the Act applies to highly paid executives and the compensation he earned constitutes wages.
G.L.c. 93A Does Not Apply to Claims Arising Out of the Employment Context
Biofertec argues that Sword violated G.L.c. 93A because he (1) induced Biofertec to sign the employ *491 ment agreement, (2) disclosed confidential business information gained while employed at Biofertec, and (3) carried away confidential business information. Sword moves for summary judgment as a matter of law arguing that each of these situations concern an employment relationship, which is outside the scope of G.L.c. 93A.[5] Courts have consistently held the employment relationship outside the scope of G.L.c. 93A. See Manning v. Zuckerman, 388 Mass. 8, 14 (1983) (an employee and an employer are not engaged in “trade” or “commerce” with each other and therefore any dispute arising from the employment relationship is not covered by remedies set forth in G.L.c. 93A). Inducing Biofertec to sign the employment agreement, disclosing confidential business information gained while employed at Biofertec and carrying away confidential business information all arise from the employment context, and therefore, Sword is entitled to summary judgment as a matter of law. See Informix, Inc. v. Rennell, 41 Mass.App.Ct. 161, 163 (1996) (post-employment violation of non-competition agreement that arose out of employment relationship was not actionable under G.L.c. 93A). Even assuming Sword did each of the alleged items, summary judgment must be granted for Sword because G.L.c. 93A does not cover that which occurs in the scope of the employment relationship.[6]
ORDER
For the aforementioned reasons, it is hereby ORDERED that the plaintiffs’ motion for summaiyjudgment on Count I of the Complaint and Count V of Biofertec’s counterclaims be ALLOWED. It is further held that Biofertec’s cross motion for summaiyjudgment on Count I is DENIED.

Biofertec’s cross motion for summaiyjudgment included all four counts of the complaint. All counts of Biofertec’s motion for summary judgment are DENIED. Specifically, Biofertec’s motion for summary judgment on Counts II, III, and IV of Sword’s complaint cannot enter as a matter of law given the abundance of material facts in dispute.

There is a dispute between the parties over the terms and conditions of the salary Sword was promised.

Sword calculates the amount of wages due and owing as $48,342.00 ($29,110.00 for salary and $19,232.00 for the two-month termination notice period).

G.L.c. 149, §148 states, in part: “Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week... and any employee discharged from such employment shall be paid in full on the day of his discharge . . . and provided, further, that employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general. . . may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly.”

Biofertec did not address their opposition to Sword’s motion for summary judgment and final judgment on the G.L.c. 93A claim in its opposition to plaintiff’s motion for partial summaiyjudgment.

Because only partial summary judgment is granted on Sword’s wage claim, this Court refuses to allow Sword’s motion for final judgment under Rule 54(b).