Kern, J.
The Plaintiff, Joel Beaule (“Beaule”), commenced this action to recover the sum of $1,617.07, the amount of unpaid commissions/bonuses from the Defendant, M.S. Inserts and Fasteners Corp. (“M.S. Inserts”), as well as treble damages, interest and attorneys fees. He brought this action under the Wages Act, also alleging breach of contract, money had and received, and conversion (the last three claims are derivative of the first). After a trial without a jury in which the court heard from two witnesses and received nine exhibits, and based upon a preponderance of the credible evidence, the court makes the following findings of fact and rulings of law.
*624 FINDINGS OF FACT
Beaule was an employee of M.S. Inserts between July 14, 1999 and February 12, 2001, working in the sales department. On February 12, 2001, Beaule resigned. In January and February 2001 Beaule’s base salary was $10 per hour. In addition Beaule, and all M.S. Inserts employees, had an opportunity to earn more money through the company’s bonus plan (“the plan”). “Bonuses” were calculated with a formula, stated in the plan, which took into account the total bookings, shipments and profit margins. The bonuses were calculated at the end of every month and bonus checks, along with a summary sheet, were sent to each employee approximately three weeks later. Beaule, his fellow employees, and M.S. Inserts’ management often referred to the bonuses as commissions.
The plan states in pertinent part: “Bonuses are based on individual sales, payable at the end of the month . . . Bonuses are considered as reimbursement for extra efforts on the part of the individual. If at any time it is felt that an individual is not contributing their share, then management reserves the right to cancel that individual!’Js bonus.” (Emphasis in original.) At no time during Beaule’s employment with M.S. Inserts did management cancel any employee’s individual bonus.
The court heard credible testimony that Beaule received monthly bonuses throughout his employment, including all of2000. The parties do not dispute that had Beaule remained employed with M.S. Inserts he would have received bonuses of $848.19 and $768.88 for bookings in January and through February 12th, respectively.
When Beaule gave his resignation on February 12, 2001, he was asked to stay through the day. He said that he would, but left for lunch and never returned. Beaule was also asked if he was going to work for a competitor and said he was not. He did, however, immediately start working for D.B. Roberts, a direct competitor. After management learned that Beaule was working for D.B. Roberts, it canceled his bonus. M.S. Inserts did not have a non-compete agreement with its employees and nothing in the plan indicates that an employee forfeits bonuses due if he or she goes to work for a competitor.
RULINGS OF LAW
Under the Wage Act, G.L.c. 149, §148, an employee who voluntarily terminates his employment must be paid in full all wages earned on the following regular pay day, or absent a regular pay day, the following Saturday.[1] Violations of the provision may result in injunctive relief, damages, treble damages, attorneys fees and costs, as well as fines and criminal penalties. G.L.c. 149, §§148, 150. The statute’s primary purpose is “to assure that employees are paid their wages on a weekly basis.” Commonwealth v. Savage, 31 Mass.App.Ct. 714, 714 (1991). “The statute was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages.” Cumpata v. Blue Cross Blue Shield of Mass., Inc., 113 F.Sup.2d 164, 167 (D.Mass. 2000).
The court has construed the wage act narrowly. See Savage, 31 Mass.App.Ct. at 716. The statute includes as wages holiday pay, vacation pay and “definitely determined” commissions which have “become due and payable.” The question before this court is whether the plan is truly a bonus plan or is only one in name.
Whether this court should consider extrinsic evidence regarding the appropriate interpretation of the plan is determined by the parol evidence rule. Parol evidence is a source for interpretation when contract terms are ambiguous. Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 496 (1997). The rule holds that a writing which is intended by the parties to be their final agreement cannot be modified by evidence that adds to, varies or contradicts the writing. Where the language of a contract is ambiguous parol evidence may be used to clarify its meaning.
Before the parol evidence rule can apply, the court must be sure that it has before it a written contract signed by the parties and intended to be a statement of their complete agreement. Welch v. Bombardieri, 252 Mass. 84, 87 (1925); Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 428 (2000). Here there was no written contract signed by the parties for the court to consider, therefore the parol evidence rule does not apply and extrinsic evidence may be considered to interpret the intent of the plan.
Simply because the M.S. Inserts’ employees called the bonuses commissions, does not mean that they are commissions. If the bonus acts like a commission, however, calling them bonuses does not make it so. “Bonus is a word of flexible meaning.” Attorney General v. Woburn, 317 Mass. 465, 467 (1945). “The offer of a bonus is the means frequently adopted to secure continuous service from an employee, to enhance his efficiency and to augment his loyalty to his employer, and the employee’s acceptance of the offer by performing the things called for by the offer binds the employer to pay the bonus, so called.” Id. A promise to pay a bonus may be part of the contract of service and not an offer of a mere gratuity. Id., citing Zampatella v. Thompson-Crooker Shoe Co., 249 Mass. 37 (1924).
In Attorney General v. Woburn, the court held that an increase in salary was called a bonus only to denote that it was temporary and not that it was a gift. 317 Mass, at 467. The court held that the so called bonus was not a bonus at all, but a temporaiy increase in salary, which was protected under the Wage Act.
Commissions are not a fixed amount, but are based on a percentage of sales. See e.g., Okerman v. VA *625 Software Corp., 16 Mass. L. Rptr. 513 (Mass.Sup., July 9, 2003). Just as the bonuses in Attorney General v. Woburn were actually salaiy increases, the bonuses given by the plan are actually commissions. 317 Mass. 465.
In construing the Wage Act, the courts have limited commissions to those which are a significant part of the weekly compensation of a person who would ordinarily be paid weekly, such as retail salespeople. Commonwealth v. Savage, 31 Mass.App.Ct. 714, 716 (1991); see also Cumpata v. Blue Cross Blue Shield of Mass, Inc., 113 F.Sup.2d 164 (D.Mass. 2000). In Savage, the court distinguished between commissions earned by a real estate broker and commissions protected by the Wage Act, holding that real estate commissions are irregular and substantial. Savage, 31 Mass.App.Ct. at 716.
The case at hand differs significantly from Cumpata. Gary Cumpata was a highly paid sales executive who participated in a voluntary incentive plan. Through this incentive plan Cumpata received commissions quarterly and received additional compensation based on profitability annually. Cumpata had altered his incentive agreement for a particular transaction, which doubled his commission for that transaction. Cumpata was paid his original commission, but was not paid the additional compensation under the separate agreement. Blue Cross Blue Shield argued that the agreement was not valid under company rules, and the court held that the commission was not covered under the Wage Act. The court found that the commission was irregular (calculated quarterly or annually), substantial (20 to 40 percent of the transaction), above and beyond his base salary, and therefore not wages under the Act.
Unlike the Plaintiff in Cumpata, Beaule was an hourly employee who relied upon bonuses as a significant portion of his income. Beaule’s bonuses were calculated regularly (monthly) and were only a fraction of a percent of his sales and bookings. In order for a commission to be definitely determined, the contingency which triggers the commission must already have occurred and the amount due must be capable of being precisely ascertained. Lohnes v. Darwin Partners, Inc., 15 Mass. L. Rptr. 157 (Mass.Sup., July 23, 2002). Bonuses were calculated monthly based on monthly bookings and shipments using the formula laid out in the plan. The formula did not fluctuate month to month. The amount earned each month was determined at the end of every month using the month’s figures. The contingency which triggered the bonus was the monthly bookings and shipments. The bonus was only calculated through bookings and shipments which had been completed in the month.
The plan also states that bonuses are payable at the end of the month. Beaule was employed at M.S. Inserts for the entire month of January. At the end of January, as stated in the plan, Beaule’s bonus became due and payable. As of that time, and at the time of his resignation on February 12, 2001, there was no reason Beaule should not have received his January bonus. His bonus had not been canceled by management.
On the date of his resignation, Beaule’s February bonus could not be definitely determined and had not become due and payable. Because bonuses were partially based on the sales of the entire group for the entire month, they could not be definitely determined in the middle of a month. Under the plan, the bonuses do not become due and payable until the end of the month. When Beaule resigned in the middle of the month, he forfeited his right to his bonus for that month.
ORDER
Judgment shall enter for the Plaintiff in the amount of $2,544.57 (three times the January 2001 total of $848.19) plus reasonable attorneys fees and costs.

The statute provides in pertinent part: “Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him . . . any employee leaving his employment shall be paid in full on the following regular pay day . . . The word ‘wages’ shall include any holiday or vacation payments due an employee under an oral or written agreement. . . This section shall apply, in so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of [§150].” G.L.c. 149, §148.