Graham, J.
Plaintiff, Brian Parow, individually and on behalf of the uniformed fire fighters in the City of Malden (City) filed this class action alleging that the defendants, Richard Howard and the City (sometimes referred to hereinafter as the Defendants), have instituted a policy of delaying payments of overtime to the Plaintiffs in violation of G.L.c. 149, Sec. 148, thus entitling them to damages and injunctive relief. The Defendants claim that any damages suffered by the affected firefighters are de minimis, and deny the claim that the Defendants adopted a longstanding policy of violating G.L.c. 148. After hearing, this Court grants summary judgment in favor of the Plaintiffs.
FACTS
The facts as viewed in the light most favorable to the nonmoving Defendants, as contained in the summary judgment record, are as follows.
1.Plaintiff, Brian Parow, is a uniformed fire fighter for the Defendant, City. He has worked numerous overtime shifts for the City over the three years preceding the filing of this lawsuit on April 3, 2002. He brings this case individually and on behalf of a class of persons similarly situated. The class consists of Malden fire fighters and officers who have worked overtime shifts and who have not been paid wages for their overtime in a timely fashion. The class meets all of the requirements of Rule 23 of the Massachusetts Rules of Civil Procedure.
2. Defendant City is a duly incorporated municipality of approximately 50,000 residents within the Commonwealth of Massachusetts, and is responsible for maintaining the Fire Department. During the period relevant to Plaintiffs’ complaint, the City employed approximately 120 firefighters who were represented by IAFF Local 902 (Union). Defendant Richard Howard is the duly-elected Mayor of the City. In that capacity he is responsible for the overall administration of the Fire Department and, in particular, for requesting sufficient appropriations to pay for overtime worked by Plaintiffs.
3. Plaintiffs generally work one of two work schedules: (1) officers and fire fighters assigned to fire stations work two separate twenty-four-hour shifts every eight days; and (2) officers and fire fighters assigned to fire prevention positions work four or five shifts per week. Plaintiffs’ pay period runs from Sunday through Saturday; they are paid on the Thursday following the pay period.
In compliance with G.L.c. 48, §§58C and 58D, City fire fighters are compensated overtime pay at a rate of one and one-half times their regular rate for work in excess of 42 hours in a week. Each plaintiff received earned overtime compensation during the course of his employment, and each fire fighter was compensated at the stated overtime rate.
4. As of the date of the Plaintiffs’ Complaint, no fire fighter in the City was due overtime pay for the period of April 2, 1999 through April 3, 2002. However, on hundreds of occasions during the three years preceding the filing of the instant lawsuit, the City did not pay Plaintiffs for the overtime worked within seven days after the pay period during which the Plaintiffs worked overtime. In most cases, the delayed overtime payments represent four (4) to twelve (12) hours per employee.
In some cases, members of the class of Plaintiffs waited three or more months before receiving payment for overtime work. Defendants acknowledge that a limited number of fire fighters experienced delay in receiving overtime compensation, but note that all overtime due was paid by the time the Plaintiffs filed this action.
5. Despite repeated demands made upon the Defendants by the Union, on numerous occasions during the period following the filing of the Complaint at bar, the City failed to pay Plaintiffs for their overtime within seven days after the pay period during which they worked the overtime. A detailed summary of the delays *198 in payment of overtime compensation suffered by the Plaintiffs is set forth in the uncontested affidavit of Plaintiff, dated March 5, 2003 which is incorporated herein by reference.
DISCUSSION
A. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Lumbermens Mut Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 465 (1995); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Massachusetts Mun. Wholesale Elec. Co. v. Springfield, 49 Mass.App.Ct. 108, 109 (2000).
B. Payment of Earned Overtime Under G.L.c. 149, §148.
General Laws c. 48, §58D, provides that fire fighters, including Plaintiffs, may not be required to work more than forty-two (42) hours per week. Moreover, G.L.c. 48, §58C provides that any fire fighter who in fact works more than 42 hours on average in a week shall be paid overtime for such work, at a time not less than one and one-half his basic hourly rate of compensation, unless, in the alternative, such individual elects to be given time off in lieu of additional pay. Hence, Massachusetts law requires public employers to pay fire fighters overtime pay (one and one-half the basic hourly rate) for all hours of work in excess of 42 hours in a week.
Furthermore, G.L.c. 149, §148 provides, in relevant part, that an employee who has earned wages must be paid such wages within seven (7) days of the termination of the pay period during which such wages were earned.
Every person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him within six days of the termination of the pay period during which the wages were earned if employed for five or six days in a calendar week, or to within seven days of termination of the pay period during which the wages were earned if such employee is employed seven days in a calendar week, or in the case of an employee who has worked for a period of less than five days, hereinafter called a casual employee, shall, within seven days after the termination of such period, pay the wages earned by such casual employee during such period, but any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; . . .
G.L.c. 149, §148 (emphasis added).
The Legislature enacted Section 148 to limit “the interval between the completion of a work week and the payday on which the wages earned in that week will be paid.” American Mutual Liab. Ins. Co. v. Comm’r of Labor & Industries, 340 Mass. 144, 145 (1959). The statute sought “primarily to prevent unreasonable detention of wages . . . The cure which the Legislature prescribed for the evil noted was to require regular and frequent payment . . . Payment long in arrears could mean . . . dissipation on payday of a large part of the accumulation sums by irresponsible employees with consequent adverse effect on family and community. The statutory remedy met this possible evil.” Id. at 147 (emphasis in original) (citations omitted). The Legislature deemed it important that employees receive wages regularly and promptly after they had been earned. Mutual Loan Co. v. Martell, 200 Mass. 482, 485 (1909).
Defendants argue that the purpose of the statute is to protect employees from themselves, not to function as a procedural mechanism by which the Plaintiffs may benefit without suffering tangible harm. They further argue, and this Court concludes, that the Plaintiffs have failed to prove that Defendants deprived fire fighters of overtime pay pursuant to a “long standing policy” that violated G.L.c. 149, §148. Several hundred fire fighters were paid on time, and there is no evidence presented that the City regularly issued overtime payments to fire fighters consisting of excessively large lump sum payments. Finally, the Defendants argue that because (1) the delayed overtime payments were small (mainly consisting of four (4) to twelve (12) hours per fire fighter) and (2) all fire fighters ultimately received any compensation due them, the Defendants acted reasonably and the fire fighters’ damages are minimal.
However, the clear intent of the statute is to require the timely payment of wages, American Mut. Liab. Ins. Co., 340 Mass, at 147, and the Defendants acknowledge that they have repeatedly failed to do so with respect to Plaintiffs’ overtime wages. Section 150 of G.L.c. 149 sets forth a limited number of defenses that an employer may raise to avoid liability thereunder. Late payment is not among those defenses. Defendants could only avoid liability by showing that they had actually paid Plaintiffs’ earned overtime wages in the time permitted under Section 148. The Defendants cannot meet this standard.
Moreover, there is no support, factually or legally, for the Defendants’ de minimis argument. First, a failure to pay Plaintiffs’ earned overtime wages for months is never de minimis. Second, the statute does not provide such a defense. Rather, the statute mandates prompt payment of wages in the time permitted, regardless of the amount.
In the case at bar, Defendants have consistently violated G.L.c. 149, §148, by failing to pay Plaintiffs their earned overtime wages within seven days of the termination of the pay period in which they worked the overtime. Moreover, Defendants have knowingly violated the statute. Even after the case at bar was filed, Defendants failed to pay the Plaintiffs for overtime worked within the period required by statute.
*199 C. DAMAGES
Plaintiffs contend that pursuant to G.L.c. 149, §150, a Court finding of a violation of Section 148 mandates an award of treble damages plus attorneys fees and costs. Defendants argue that whether such damages are appropriate is determined by the court’s discretion. Pursuant to G.L.c. 149, §150, Plaintiffs claiming to be aggrieved by a violation of §148 may prosecute an action for damages, including an award of treble damages, “for any loss of wages and other benefits” and attorneys fees and costs:
Any employee claiming to be aggrieved by a violation of section one hundred and forty-eight. . . may .. . institute and prosecute ... a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees.
Indeed, some Courts have interpreted the language in §150 to require the award of treble damages, attorneys fees and costs, See Gibbs v. Archie, 2002 Mass.App.Div. 205 (2000); Bollen v. Camp Kingsmont, 2000 Mass.App.Div. 56 (2000); Chiapetta v. Lyons, 1999 Mass.App.Div. 276 (1999). However, this Court determines that whether such an award is mandatory or discretionary need not be addressed here. That issue is irrelevant because this Court concludes that, even if discretionary, treble damages are warranted. Although the actions of the Defendants cannot be described as outrageous and stemming from an evil motive, their actions were willfully indifferent to the Plaintiffs’ rights.
This Court determines that damages are to be awarded to the Plaintiffs based on the interest (calculated at a rate of twelve percent per annum) earned on the overtime wages for the time period beginning when the wages were unlawfully withheld until payment was received. G.L.c. 231, §6C. This interest is to be trebled pursuant to G.L.c. 149, §150. Plaintiffs are also awarded the costs of litigation and reasonable attorney fees, the amount of which must be determined at a subsequent hearing.
D. Injunctive Relief
In violation of G.L.c. 149, §148, Defendants have failed to pay Plaintiffs, even after this lawsuit was instituted, for earned overtime wages within seven days after the pay period in which the Plaintiffs earned the overtime. Accordingly, this Court enters an order permanently enjoining Defendants from continuing this unlawful conduct.
CONCLUSION AND ORDER
For the foregoing reasons, this Court ORDERS that Plaintiffs’ motion for summary judgment is ALLOWED and enters an award for:
(a) Permanent injunctive relief, barring Defendants from continuing to violate G.L.c. 149, §148;
(b) treble damages on the amount of all interest (calculated at a rate of twelve percent per annum) earned on the overtime wages for the time period beginning when the wages were unlawfully withheld until payment was received; and
(c) reasonable attorneys fees and costs and prejudgment interest.