Burnes, Nonnie S., J.

*344
INTRODUCTION

Plaintiff Donald C. Richards (“Richards”) sued his former employer Datatec Systems, Inc. (“Datatec”), Isaac J. Gaon (“Gaon”), the former CEO of Datatec, and Raul Pupo (“Pupo”), the CEO who replaced Gaon. In Count Five, Richards claims that all defendants violated G.L.c. 149, §148 et seq. (sometimes referred to as the “Wage Act”).[1] In response to the defendants’ Motion to Dismiss, as it relates to the Wage Act claim, the court invited, and the defendants moved for, a more definite statement. That motion was allowed after hearing and the court ordered Richards to identify the “origin of the allegedly due commissions” even though Richards might not be able to quantify the amount of the commissions. Following the filing of the First Amended Complaint, the defendants press their Motion to Dismiss the Wage Act claim.

DISCUSSION

From his complaint, the court has learned that Richards entered into an Executive Employment Agreement with Datatec on June 21, 1989. Richards was employed as Datatec’s National Northeast Account Manager from that time until his employment was terminated on September 26, 2003. Richards’ starting salary was $50,000. His contract was to be renewed yearly unless terminated on 90 days notice by either party. At the time of his termination, he was being paid an annual salary of a bit over $63,000.
In the First Amended Complaint, Richards identified the “origin” of the commissions that he says fall under the Wage Act as coming from a contract between CVS and Datatec from March 2002, for which a purchase order was received by Datatec in April 2002. Richards says that, pursuant to that contract, CVS was to pay Datatec “approximately $32,000,000 over 30 months, or on average more than $1,000,000 a month for two and one-half years.” Richards further alleges that Datatec, sometime after the CVS contract was “landed” by Richards, raised his sales quota and lowered the commission rate. Richards was terminated eleven months after the purchase order was received by Datatec from CVS.
Richards said in the Complaint and in the First Amended Complaint that he was paid an annual salary and “sales commissions based upon a written sales commission plan.” Richards attached to his Complaint as Exhibit 2 a document entitled “Account Manager, Compensation Program, Fiscal Year - 2003.” The court understands that to be the commission agreement that he offers as support for his claim of commissions.[2] That document states no sales quota and no commission rate. It states four contingencies which must be satisfied before commissions will be paid and states that Datatec will pay commissions only on amounts invoiced during the Account Manager’s employment with Datatec. Richards does not say in his complaint what his sales quota was at the time of the CVS contract, what his commission rate was at that time, nor what event would trigger the application of that quota or rate to this contract.
The relevant portions of the so-called Wage Act are:
This section shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty.
The president and treasurer of a corporation and any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation within the meaning of this section.
G.L.c. 148, §149.
In order for commissions to come within the purview of the act, they must be “definitely determined” and have become “due and payable.” Richards alleges that commissions are due and payable but he provides no factual support for that statement nor does he provide any factual allegations from which the court could conclude that they have been definitely determined. What triggered a commission on a sale, i.e., did it have to be booked? Invoiced? Paid? What was the amount of Richards’ quota? Had he reached it in 2002 or 2003? What was Richards’ commission rate?
Richards does allege that Datatec changed both his sales quota and his commission rate sometime after the CVS contract but he does not allege sufficient facts, even on the second try, so that the court could figure out that there is enough information to assess how, when, why, or how much he might be due, this keeping in mind that Richards was an employee of Datatec for nearly a year after the CVS contract was signed. As National Account Manager, he must have known some information about that account which would illuminate whether his right to a commission had been triggered and how much that commission would be. Further, he must have thought he had reached whatever milestone he was required to reach to be entitled to a commission on this sale and he must have thought that there was a rate applicable. What and how had he been paid on other sales?
The second and probably bigger problem for Richards is that the court cannot tell whether commissions were a significant portion of Richards’ income each pay period. See Lohnes v. Darwin Partners, Inc., 2002 WL 31187688 (Mass.Super. 2002) (15 Mass. L. Rptr. 157) (Lohnes alleged that her commissions constituted a significant part of her biweekly income). G.L.c. 149, § 148 was intended primarily “to prevent unreasonable detention of wages” by requiring “regular and frequent payment.” American Mutual Liability Ins. Co. v. Commissioner of Labor & Industries, 340 Mass. 144, 147 *345 (1959). By the terms of the statute, commissions are included “so far as apt.” The court takes “apt” here to mean that commissions are included as far as is appropriate to further the purpose of the statute, that is, to make sure that employees are paid promptly and regularly amounts on which they rely to manage their day to day lives. See Commonwealth v. Savage, 31 Mass.App.Ct. 714, 716 (1991) (the legislative purpose of the act is to assist employees for whom commissions constitute a significant part of weekly income). See also Beaule v. M.S. Inserts and Fasteners Corp., 2004 WL 1109796 (Mass.Super. 2004) (17 Mass. L. Rptr. 623) (“In construing the Wage Act, the courts have limited commissions to those which are a significant part of the weekly compensation of a person who would ordinarily be paid weekly, such as retail salespeople,” citing Savage)-, Dennis v. Jager, Smith & Stetler, P.C., 2000 WL 782946 (Mass.Super. 2000) (same) (11 Mass. L. Rptr. 567). That is, the commissions must be part of an employee’s regular compensation, not episodic payments from special events. See Savage at 716 (real estate commissions). Richards makes no factual allegations that would allow this court to conclude that, if those allegations were substantiated at trial, the commission plan under which he seeks commissions from the CVS contract provided him a substantial portion of his regular compensation. Richards has not stated a claim under the Wage Act.

ORDER

For the reasons stated in this opinion, the court ALLOWS the defendants’ Motion to Dismiss Count Five of the First Amended Complaint.

Richards also cites G.L.c. 151, §§1B and 20. These sections of c. 151 address the rights of employees to be paid overtime and minimum wage and appear to have nothing to do with this case. The court will consider Richards’ rights under c. 149, §148.

Attached to the defendants’ Motion to Dismiss as Exhibit 1 is the exact same document which, for some reason, Richards now says in his memorandum in opposition to the defendants’ Motion for a More Definite Statement that he “did not receive it until the defendants attached it to their motion to dismiss the complaint after plaintiff filed this lawsuit. It was not something he agreed to.” Based on Richards’ own filings, the court will consider Exhibit 2 to the Complaint as it may be necessary to the deciding of this motion.