Gants, J.
The plaintiff, Amy Dobin (“Dobin”), in her Third Amended Complaint, has filed suit alleging four causes of action against her former employer, the defendant ClOview Corporation (“ClOview”): (1) failure to pay salary in violation of the Wage Act, G.L.c. 149, §§148 & 150; (2) wrongful termination in violation of public policy; (3) breach of contract for the alleged failure to pay earned commissions; and (4) breach of the implied covenant and good faith for allegedly terminating her to avoid paying her commissions that were about to be earned. Dobin has moved for partial summary judgment on the Wage Act claim, while ClOview has cross-moved for partial summary judgment on the Wage Act claim and the wrongful termination claim.
BACKGROUND
In September 1998, Scott McCready, with two other investors, began ClOview, a company that developed and sold software designed to help large information technology vendors improve their information technology purchase decisions.[1] Initially, McCready was ClOview’s sole employee. Later, McCready’s wife, Ann Palermo, became its second employee and Dobin became its third.
Before becoming an employee, Dobin had been retained by ClOview as a consultant. McCready offered her a management position overseeing three account relationships and developing best practices for two of ClOview’s major customers.[2] In a document entitled Job Offer for Amy Dobin, dated September 1, 1999, McCready offered her an annual salary of $75,000 per year based on a three-day workweek, as well as monthly commissions. Dobin accepted the terms of employment set forth in that Job Offer and began work as an employee in September 1999. In or about June 2000, her annual salary was increased to $95,000, still based on a three-day work week.
Dobin was timely paid her salary for the months of September 1999 through January 2000. According to McCready, in or around February 2000, McCready, Palermo, and Dobin discussed the financial condition of ClOview. McCready testified that they' recognized that ClOview, technically, was bankrupt in that it had only enough money to pay its rent, electric, and telephone bills for four to six months, but not enough to pay its three employees. They discussed the possibility of closing the company but the three of them agreed that they would keep the company alive by deferring any salary payments until business improved and the corporation could afford to pay them.
Dobin has testified that no such meeting ever occurred with McCready and Palermo. Yet, the discussion she recalls between her and McCready is similar in content to that described by McCready. According to Dobin, McCready initiated a discussion with her in late January or early February 2000 in which he told her that there was not enough money to pay salaries, just enough to pay rent and utilities for three or four months. He asked her whether she would defer her salary. She asked him whether salaries would be the first obligation paid when the money came in, and he said salaries would be paid right after rent and utilities. They discussed the possibility of selling the assets of ClOview and estimated the value of those assets. She did not consider quitting her job because she believed in the company and in McCready, and believed the company had some large deals pending. They also discussed that the salary deferral would likely be needed only in the short term because the company had a large deal pending and anticipated the receipt of venture capital. In short, Dobin admits that she agreed to defer her salary for a period of time provided that salaries would be the first things paid, after rent and utilities, when money came into the company.
Dobin received her monthly salary for February 2000 in October 2000, and her March 2000 salary in November 2000. On December 6, 2000, she was paid her salary for April and May 2000. That same day, Dobin spoke with McCready and told him that she had spoken with the Attorney General’s Office, and had learned that, under the labor laws in Massachusetts, it was unlawful to delay her compensation even if she had agreed to it. She followed up on this discussion by sending McCready an email on December 7, 2000 that listed the websites which discussed the Massachusetts labor laws. McCready replied with an email to her that same day in which he wrote:
I am very well aware of the labor laws as they pertain to Massachusetts. I think you are missing a key issue which is that you agreed to have your compensation delayed, this was done with your wishes. Your were well aware of the financial situation at ClOview at the time you did this so it was done with full knowledge. Anyway I am not the person to try and make the importance of this point to you. *786 Please put together a complete picture of the sales commissions you believe are owed to you under the terms of your employment.
Dobin replied by email that same evening. She wrote:
True, I was aware of the financial situation at ClOview and did agree to delay my compensation UNTIL MONEY CAME IN TO PAY THE SALARIES, AND UNDER THE CONDITION THAT WHEN THE MONEY CAME IN, THE SALARIES WOULD BE THE FIRST THINGS PAD. At the time, nobody was receiving their salaries. Since that time you have hired 2 additional employees/contractors and are paying them. In addition you are now hiring outside firms to do work for you and you are paying them. [Emphasis in original.]
I was not aware of the State Labor Laws regarding payment of wages until this week. If you were aware of the State Labor Laws, then you should have been aware that such an agreement is a direct violation of the laws. Chapter 149, section 148 of these labor laws clearly states that “No person shall by special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty.” These labor laws also state that employees must be paid weekly or bi-weekly, when in fact you have been paying us monthly.
I realize that ClOview is a small struggling start up company, but it is a corporation and it is operating in the state of Massachusetts. A1 corporations must abide by the federal and state laws governing them, regardless of the size of the company or the hardships that they face . . .
I have remained working at ClOview for 15 months because I fully believe in and support our mission and our products, and I enjoy working with you and Ann. I believe in the company’s future and would like to continue working for you. I have not filed any complaints with the Attorney General and don’t want to. I sincerely hope we can resolve these issues and move forward . . .
On December 12, 2000, McCready instructed ClOview’s accountant to prepare checks for Dobin paying her the balance due for her monthly salary. On December 13, 2000, McCready told Dobin that her employment at ClOview was being terminated, and provided her with seven checks for the period from June through December 15, 2000, each post-dated December 15, 2000. Once these checks were successfully negotiated and subsequent checks for vacation pay were delivered, Dobin had received all the salary payments due to her during the course of her employment at ClOview, albeit belatedly.
On December 13, 2000, immediately after her termination, Dobin initiated this action in Superior Court. ClOview did not receive notice of the complaint until it was served on December 22, 2000.
DISCUSSION
Count I: The Wage Act Claim
In her motion for partial summary judgment, Dobin argues that she is entitled to judgment as a matter of law on her claim for deferred salary payments under the Wage Act. To prevail on this claim, Dobin must establish conclusively that: (1) she is an employee within the meaning of the Wage Act, G.L.c. 149, §148, whose monthly salary payment is a “wage” as defined in the Act; (2) Dobin and ClOview’s agreement to defer her compensation is void as a matter of law; and (3) ClOview may not assert its belated payment of Dobin’s back salary as a defense. ClOview contests each of these elements, so this Court will consider each in turn.
Is Dobin an employee within the meaning of the Wage Act whose monthly salary payment is a “wage” under the Act?
Under the plain language of G.L.c. 149, §§148 and 150, this Court finds that Dobin was an “employee” protected under the Wage Act and that her monthly payment of salary was a “wage” whose timely payment was mandated by the Act.
Dobin was a salaried employee, to be paid $75,000 per year, plus monthly commissions, until June 2000, when her annual salary was increased to $95,000. The Wage Act specifically includes salaried employees within its scope:
[A]n employer may make payment of wages prior to the time that they are required to be paid under the provisions of this section, and such wages together with any wages already earned and due under this section, if any, may be paid weekly, bi-weekly, or semi-monthly to a salaried employee, but in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee. For the purposes of this section the words salaried employee shall mean any employee whose remuneration is on a weekly, bi-weekly, semi-monthly, monthly or annual basis, even though deductions or increases may be made in a particular pay period.
G.L.c. 149, §148. While the entire Wage Act is hardly a model of legislative draftsmanship, it is plain from this language that, while an employer may pay a salaried employee wages in advance, it may not delay payment “for more than six days from the termination of the pay period in which such wages were earned by the employee.” Id. Here, Dobin had agreed to be paid on a monthly basis, which, in view of her administrative position, was specifically authorized by the Wage Act. Id. (“employees engaged in a bona fide executive, administrative or professional capacity as determined by the attorney general. . . may be paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly”). Consequently, under the Wage Act, Dobin was required to be paid her monthly *787 wage no more than six days after the termination of her monthly pay period.
Other courts that have interpreted the Wage Act more narrowly have focused on the payment of commissions or bonuses, not the payment of wages arising from a salaiy. For instance, the Appeals Court, in considering whether the payment of commissions to a real estate broker falls within the rubric of the Wage Act, looked to the title of the amendment that revised the Act to include the payment of commissions'An Act relative to the weekly payment of commissions due to certain employees"and the placement of the provision concerning commissions in the portion of the statute addressing the weekly payment of wages, and inferred “a Legislative purpose to assist employees who would ordinarily be paid on a weekly basis, such as retail salespeople, and for whom commissions constitute a significant part of weekly income.” Commonwealth v. Savage, 31 Mass.App.Ct. 714, 716 (1991). Finding that real estate brokers did not fall in that categoiy, the Court held that their commissions are not protected by the Wage Act. Id. In Baptista v. Abbey Healthcare Group, Inc., United States District Judge Richard Stearns, in considering whether a business executive was entitled to the prompt payment of stock options under the Wage Act, found “no reason to extend the protections of a wage earner’s statute to cover bonuses potentially owing to highly paid executives . . .” Civ. Action No. 95-10125-RGS, slip op. (D.Mass. April 10, 1996). Judge Steams specifically contrasted the claimed award of a bonus from the payment of wages. Id. Similarly, Judge Carol Ball, in considering whether a contract attorney is entitled under the Wage Act to prompt payment for work he had performed, found that the compensation he was seeking was neither a wage nor a commission under the Act because it “was contingent on a number of factors.” Dennis v. Jager, Smith & Stetler, Civ. Action No. 984974-F, slip op. (Suffolk Superior Ct. April 10, 2000) (11 Mass. L. Rptr. 567). None of these cases held that wages fall outside the scope of the Act because they were paid to a highly-paid salaried employee.
Nor could any such interpretation square with the language of the Wage Act or permit any reasonable administration of the Act. As discussed earlier, the Act specifically defines a “salaried employee,” not in the context of excluding such persons from the scope of the Act but in the context of including them. See G.L.c. 149, §148. Moreover, by specifically noting that “employees engaged in a bona fide executive, administrative or professional capacity... maybe paid bi-weekly or semi-monthly unless such employee elects at his own option to be paid monthly,” the Act demonstrates that it recognizes that these high-ranking employees are protected under the Act. See id. Finally, if highly-paid salaried employees were indeed excluded from the Act, the Legislature would have needed to draw a line separating those whose wages are protected under the Act from those whose wages are not. The absence of any such line, and the arbitrariness of any court interposing such a line, reflects the legislative intent that no such distinction be drawn. See Kohli v. RES Engineering, 2000 Mass. Super. LEXIS 463 *5 -*6 Civil Action No. 00-02458, (Middlesex Superior Ct. December 19, 2000) (Garsh, J.) (13 Mass. L. Rptr. 108).
2. Is Dobin and ClOview’s agreement to defer her compensation void as a matter of law?
The Wage Act specifically provides, “No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty.” G.L.c. 149, §148. The apparent purpose of this provision was to bar employers from inducing their employees to waive or otherwise surrender the protections they are provided under the Wage Act. The provision is unconditional; it sets forth no circumstance in which such a waiver would be lawful. Here, ClOview contends that Dobin volunteered to defer payment of her salary until business had improved. Indeed, ClOview contends that she benefitted from this deferral, because ClOview would have folded without this agreement to defer and she would never have received the salary payments that she ultimately did receive.
When determining a statute’s meaning, a court should give statutory words their usual and ordinary meaning, considered in light of the aim to be accomplished by the Legislature. Surrey v. Lumbermens Mut. Cas. Co., 384 Mass. 171, 177 (1981). Here, the words used in the statute are clear, as is the legislature purposeto prevent the unreasonable detention of wages. See American Mut. Liab. Ins. Co. v. Commissioner of Labor & Indus., 340 Mass. 144, 147 (1959). Viewing the words used in this provision in light of the statute’s legislative purpose, it is plain that the Legislature intended to bar any contract between an employer and employee that denied the employee the prompt payment of wages guaranteed by the Wage Act. The oral deferral agreement entered into between ClOview and Dobin was precisely such a prohibited agreement because it would have permitted ClOview to postpone paying Dobin her monthly wages well beyond the six days provided under the Act.
ClOview contends that, as a result of the oral deferral agreement, Dobin’s salaiy was no longer a “wage” as defined in the Act because it had become contingent upon a future eventthe improved financial position of the company. This Court recognizes that wages under the Act must be regular, not episodic, and contingent only upon the employee’s performance of her job. See Commonwealth v. Savage, 31 Mass.App.Ct. at 716; Huebsch v. Katahdin Indus., Inc., Civil Action No. CA004483, slip op. at 3 (Middlesex Superior Ct. April 24, 2001) (Kottmyer, J.) (13 Mass. L. Rptr. 180). Certainly, if Dobin, as in Huebsch, were to receive a lump sum payment above and beyond her first year salaiy if she worked at least 100 days in her *788 first year, her entitlement to that lump sum would be conditional upon her having worked that number of days. See Huebsch v. Katahdin Indus., Inc. at *3. In this case, however, Dobin’s salary was not contingent upon herperforming any condition beyond performing her job, so her wages continued to accrue during the time she went without pay. Instead, the deferral agreement between Dobin and ClOview simply attempted to postpone the moment payment became due for the wages she had already earned, based on the financial ability of the company to afford those wages, which is precisely what the unambiguous language of the Wage Act forbids.
Nor did the deferral agreement transform all her wages into the type of deferred compensation that the Supreme Judicial Court found were not wages under the Wage Act. See Boston Police Patrolmen v. City of Boston, 435 Mass. 718, 720 (2002). In Boston Police Patrolmen, the Supreme Judicial Court held that the portion of wages which an employee chose to defer and place in a tax-exempt deferred compensation plan are not “wages” under the Act, recognizing that, if they were, “employees could lose the federal tax benefit for which the deferred compensation statute was created.” Id. at 721. Here, in contrast to Boston Police Patrolmen, there is no state statute specifically authorizing the deferral so as to qualify for federal tax benefits under the Internal Revenue Code. Compare with id. at 720. Indeed, to the contrary, there is a state statute specifically prohibiting the deferral and no evidence that the employee chose deferral to enjoy any beneficial tax consequence.
This Court recognizes that enforcing this provision in the Wage Act may adversely affect those start-up companies which ask employees to forego wages until the company reaches financial viability. This Court does not offer any opinion as to whether the Wage Act is wise in prohibiting deferral agreements in all circumstances, or whether there are ways in which start-ups can avoid this prohibition by paying employees only the minimum wage and offering bonuses that are conditioned on the company’s financial performance. The fact of the matter is that the language of the Wage Act is crystal clear on this point, and, unless and until the Act is amended, this Court is obligated to enforce its clear mandate.
May ClOview assert its belated payment of Dobin’s back salary as a defense?
G.L.c. 149, §150 reads:
The attorney general may make complaint against any person for a violation of section one hundred and forty-eight within three months after the date thereof. On the trial no defence [sic] for failure to pay as required, other than the attachment of such wages by trustee process or a valid assignment thereof or a valid set-off against the same, or the absence of the employee from his regular place of labor at the time of payment, or an actual tender to such employee at the time of payment of the wages so earned by him, shall be valid. The defendant shall not set up as a defence [sic] a payment of wages after the bringing of the complaint. . .
Any employee claiming to be aggrieved by a violation of section 148 . . . may, at the expiration of ninety days after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing, and within three years of such violation, institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief and any damages incurred, including treble damages for any loss of wages and other benefits. An employee so aggrieved and who prevails in such an action shall be entitled to an award of the costs of the litigation and reasonable attorney fees.
Dobin contends that, since she filed her complaint on December 13, 2000 and the checks she received for unpaid monthly salary were post-dated December 15, 2000, ClOview is barred by the language of §150 from using this belated payment of wages as a defense. ClOview, based on the location of this provision in the statutedirectly below the reference to civil actions initiated by the Attorney Generalcontends that the limitation on the use of this defense applies only to cases brought by the Attorney General, not to those brought directly by aggrieved employees.
To resolve this debate, this Court must first look at the language of this provision in the context of the entire statute in an effort to discern legislative intent. At first glance, the statutory prohibition against using post-complaint payment of wages as a defense seems bizarre, since a wage payment by an employer after the statutorily mandated time period could not possibly constitute a defense to a violation under the Wage Act, regardless of whether it was made before or after the filing of the complaint. For instance, if an employer were to defer paying wages until three months after the close of the pay period, it could not offer as a defense its tardy payment to its employees, because the fact that payment was ultimately, albeit belatedly, made does not negate the fact that it was late. Therefore, to give a literal meaning to this provision is essentially to give it no meaning.
However, if one were to view this provision barring a defense of post-complaint payment in the context of the provision that speaks of treble damages for any loss of wages and benefits, it is possible to give this provision the meaning likely intended by the Legislature. Although this Court is not aware of any legislative history on the subject, it is apparent that the Legislature wished to deter an employer from failing timely to pay wages and then, when a complaint was filed against it, effectively mooting the claim by then making payment. If this tardy payment were allowed to mitigate damages, the wage earner’s claim would not truly be mooted, since her wage payment would still *789 be untimely, but the damages would simply be the money interest the wage earner lost from the delay in obtaining this money, which would likely be a trifling amount when considered against the time and expense of litigation, even if it were trebled.
This Court understands the provision barring the defense of post-complaint payment to mean that an employer found in violation of the Wage Act is required to pay treble the amount of wages and benefits that had been unpaid at the time the complaint was brought; the employer may not reduce this amount by making payment after it learns of the complaint. The corollary to this interpretation is that an employer is not required to pay treble the lost wages and benefits if the wage and benefit payments were tardy but made before suit was brought. When wages and benefits are tardy but paid before the complaint was brought, the “loss of wages and other benefits” is simply the interest foregone from the delay in payment, which would be trebled under the Act. Under this interpretation, tardy pre-complaint payment may not classically constitute a“defense” to a Wage Act violation, but it would greatly mitigate the amount of damages.
In reaching this interpretation, this Court rejects ClOview’s argument that the prohibition of the defense of post-complaint payment applies only to suits brought by the Attorney General, not to suits brought by private persons. This Court can find no rational reason why the Legislature would have barred this defense for actions brought by the Attorney General but permitted it for actions brought by the wage earner herself.
With this inteipretation of the “defense” of tardy payment, it is plain that Dobin must prevail on summary judgment as to liability with respect to her Wage Act claim. She was an employee whose monthly wages were covered under the Wage Act; the deferral agreement was void under the statute; and ClOview’s December 15, 2000 wage payments were tardy under the Actthe payment of wages through December I, 2000 should have been paid within six days of the end of the pay period, and the payments through December 13, 2000 should have been paid in full on the date of discharge, not post-dated to December 15. See G.L.c. 149, §148.
Since ClOview paid Dobin in full on December 13, 2000 with checks post-dated December 15, 2000, the key issue is whether these payments should be viewed as having been paid before or after “the bringing of the complaint,” since these payments would be awarded as treble damages only if they were paid after “the bringing of the complaint.” There is no dispute that Dobin was fired on December 13, 2000 and paid in full that day with checks post-dated to December 15, that she filed her Wage Act claim later that same day, and that ClOview had notice of her filing of a Wage Act claim only when it was served with the complaint on December 22, 2002. Under these circumstances, in view of the spirit and purpose of the Wage Act, this Court finds that ClOview made its wage payments before the “bringing of the complaint” when it furnished Dobin with checks on December 13before the action had been filed that were post-dated to December 15. Certainly, there is no dispute that ClOview intended to pay Dobin all the back pay due to her before it knew she had brought a Wage Act suit, and Dobin had the checks in hand before she filed her suit. Under these circumstances, Dobin could not ensure treble damages simply by filing her complaint before the post-dated checks became payable; the commitment to pay had preceded the filing of the complaint and the negotiation date for the checks was only two days later.
Therefore, under the circumstances of this case, the only damages that Dobin may be awarded under the Wage Act, apart from attorneys fees and the costs of litigation, are the foregone interest she suffered from the delay in paying her monthly wages, trebled. This Court shall await written submissions from the parties as to the amount of this foregone interest, as well as reasonable attorneys fees and the cost of litigation, before ascertaining a damage award.
Count II: Wrongful Termination Claim
Dobin claims she was fired in retaliation for invoking her rights under the Wage Act to McCready and is entitled to relief for her wrongful termination in violation of public policy. ClOview has moved for summary judgment, claiming that Dobin cannot maintain a common-law claim for wrongful termination contrary to public policy when there is a statutory remedy under the Wage Act.
ClOview is correct that, when the Legislature has provided a statutory cause of action to an at-will employee who has been discharged for exercising her statutory rights, there is no need to add a common-law remedy. See Mello v. Stop & Shop Cos., 402 Mass. 555, 557 (1988); King v. Driscoll 418 Mass. 576, 584 n. 7 (1994). Here, there is plainly a statutory remedy available to Dobin: G.L.c. 149, §148A provides, “No employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provision of this chapter,” and G.L.c. 149, §150 provides that an employee may bring a civil action against her employer claiming a violation of §148A. Therefore, to the extent that Dobin has brought a common-law claim of wrongful termination, such claim must be dismissed in view of the availability of the statutory remedy.
To the extent, however, that Dobin’s claim in Count II is a civil action brought under G.L.c. 149, §150, it survives summary judgment. Dobin has presented evidence that she was fired after she informed McC-ready that she had spoken with the Attorney General’s Office about her rights under the Wage Act and had asked that ClOview pay her in accordance with the Wage Act. While the reasons for Dobin’s termination *790 are certainly in dispute, there is a genuine issue of material fact as to whether Dobin’s termination was in retaliation for action she took to invoke her rights under the Wage Act.
ORDER
For the reasons detailed above, this Court ORDERS as follows:
Dobin’s motion for partial summary judgment is hereby ALLOWED as to liability with respect to her Wage Act claimCount I. This Court finds that the only damages that Dobin may be awarded under the Wage Act, apart from attorneys fees and the costs of litigation, are the foregone interest she suffered from the delay in paying her monthly wages, trebled. This Court shall await written submissions from the parties as to the amount of this foregone interest, as well as reasonable attorneys fees and the cost of litigation, before ascertaining a damage award. ClOview’s cross motion for partial summary judgment is hereby DENIED as to Count I.
ClOview’s motion for partial summary judgment as to the wrongful termination claimCount Ilis ALLOWED to the extent that Dobin has brought a common-law claim of wrongful termination. To the extent, however, that Dobin’s claim in Count II is a civil action brought under G.L.c. 149, §150, ClOview’s motion for partial summary judgment is DENIED.

The company was named Avantsoft when it was formed and later changed its name to ClOview.

McCready and Dobin differ over how Dobin became an employee. McCready recalled that Dobin wanted the security of being an employee, and asked to become one. Dobin recalled that McCready told her that his board of directors would not allow him to continue to pay her at the consulting rate she had been charging, and asked her to join ClOview as an employee.