WILLIAM OKERMAN *vs.* VA SOFTWARE CORPORATION[1]
& another.[2]

No. 06-P-1356.

Norfolk. May 17, 2007. - August 20, 2007.

Present: COWIN, BROWN, & MEADE, JJ.

*Labor,* Wages, Failure to pay wages. *Contract,* Employment, Performance and breach, Implied covenant of good faith and fair dealing. *Practice, Civil,* Summary judgment.

This court concluded that the wage act, G. L. c. 149, § 148, applied to the plaintiff's claim for commissions owed to him, where, accepting the allegations in the complaint as true, the plaintiff had demonstrated that the commissions had been definitely determined and were due and payable, and where there was no basis in the statute for imposing other restrictions on such a claim. [774-780]

The judge in a civil action alleging breach of an employment contract properly granted summary judgment in favor of the defendant employer, where the plaintiff employee's knowledge of the new terms of his employment offered in several contract modifications, his signing of each contract modification, and his continued work for the employer in accordance with the new terms of his employment constituted assent to the contract modifications as a matter of law. [780-781]

This court did not consider a claim that was not supported by proper appellate argument. [781-782]

A claim that a judge erred in denying a motion for summary judgment was not properly before this court, where the case had proceeded to trial on the merits. [782-783]

CIVIL ACTION commenced in the Superior Court Department on November 16, 2001.

A motion to dismiss was heard by *Jeffrey A. Locke*, J.; a motion for summary judgment and a motion for judgment on the pleadings were heard by *John C. Cratsley*, J.; and the case was tried before *Elizabeth B. Donovan*, J.

[1]Formerly known as VA Linux Systems, Inc.
[2]Larry M. Augustin.

*Joanne D'Alcomo* for the plaintiff.

*Bret A. Cohen* (*M. Elizabeth Gomperz* with him) for the defendants.

MEADE, J. These cross appeals arise out of an employment dispute between William Okerman and his former employer, VA Software Corporation (VA), as well as VA's president, Larry M. Augustin. Okerman appeals the dismissal of his claim pursuant to G. L. c. 149, § 148 (wage act), against Augustin; the judgment on the pleadings for VA regarding an identical wage act claim; the allowance of summary judgment to VA on Okerman's breach of contract claim; and the exclusion of certain evidence relevant to his claim of a violation of the covenant of good faith and fair dealing. VA appeals from the denial of its motion for summary judgment on Okerman's claim for breach of the implied covenant of good faith and fair dealing. For the reasons discussed below, we vacate the dismissal of Okerman's wage act claims against VA and Augustin. In all other respects, we affirm.

1. *Background.* On March 24, 1999, Okerman accepted a written offer of employment from VA. He began work as VA's Boston marketing manager on March 29, 1999. The terms of his employment included an annual base salary of $90,000, participation in the company's stock option plan, and the "standard VA Research Commission Plan for 1999." That commission plan provided that Okerman would earn a varied percentage of commissions depending on the amount of revenue he generated for VA.

A "Compensation Overview, Policy and Plan" was prepared by VA executives in November, 1999. That plan stated that VA's management had the right to "expand, reduce or otherwise change the territory and quota assignment as deemed appropriate to align with changes in business conditions." It also stated that "for all matters of administration, including modifications, the [Senior Vice President] . . . shall have the sole and final authority."

On February 8, 2000, VA notified its employees, including Okerman, of a new variable compensation plan. VA retroactively applied the February, 2000, plan to November 1, 1999. Around the same time, VA converted its fiscal year from one correspond-

ing to the calendar year to one commencing at the end of July, so that November 1 became the start of the second quarter. On February 11, 2000, Okerman signed the variable compensation plan.

On August 28, 2000, VA notified its employees, including Okerman, of its second variable compensation plan, to be applied retroactively to July 31, 2000 (the first quarter of fiscal year 2001). Okerman signed the second variable compensation plan. A third variable compensation plan was presented to VA employees on November 27, 2000, applying retroactively from October 28, 2000, through January 26, 2001, i.e., the second quarter of fiscal year 2001. Okerman signed the third variable compensation plan on December 1, 2000.

On March 5, 2001, VA notified its employees of yet another variable compensation plan, applying retroactively from January 27, 2001, through April 28, 2001, i.e., the third quarter of fiscal year 2001. Okerman signed the fourth variable compensation plan on May 20, 2001. Finally, on May 7, 2001, VA notified its employees of a fifth variable compensation plan, which applied retroactively from April 29, 2001, through July 28, 2001, i.e., the fourth quarter of fiscal year 2001. Okerman signed this plan on May 20, 2001.

In June, 2001, VA informed its employees of its decision to leave the hardware business and to terminate the majority of its employees effective June 29, 2001. Okerman remained at VA through July 27, 2001.

2. *Procedural history and Okerman's claims.* In November of 2001, Okerman filed a complaint in Superior Court asserting claims against VA of breach of contract, quantum meruit, breach of the covenant of good faith and fair dealing, promissory estoppel, and violation of the wage act. Okerman also asserted that Augustin had violated the wage act.[3]

Although Okerman acknowledged having signed each new compensation plan, he claimed that he did so only to acknowledge receipt and not to accept the terms of those plans. He claimed that VA changed its compensation plans in bad faith to

[3]Although Okerman appealed the dismissal of his wage act claims against both defendants, Augustin did not file a brief in this court, and did not request to join VA's brief. See Mass.R.A.P. 16(j), 365 Mass. 860 (1974).

deprive him of compensation. Okerman further complained that he earned commissions that were not paid, and that VA wrongfully deprived him of additional earnings derived from one particular account. Finally, Okerman claimed that his official termination date was chosen so as to deprive him of the vesting of stock options he would have received two days after his termination.

On June 27, 2002, a Superior Court judge allowed Augustin's motion to dismiss the wage act claim against him.[4] On July 9, 2003, a second Superior Court judge allowed summary judgment to VA on Okerman's breach of contract, quantum meruit, and promissory estoppel claims, but denied summary judgment as to Okerman's claim that VA breached the covenant of good faith and fair dealing. In the same decision, the second motion judge allowed VA's motion for judgment on the pleadings as to Okerman's wage act claim against VA. In September, 2004, the breach of the covenant of good faith and fair dealing claim was tried to a jury. The jury reached a verdict for Okerman and awarded him $136,876 in damages.

3. *Discussion. The wage act claims.* When reviewing a motion to dismiss, we take the well-pleaded allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff. See *Harvard Law Sch. Coalition for Civil Rights* v. *President & Fellows of Harvard College*, 413 Mass. 66, 68 (1992); *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.*, 413 Mass. 583, 584 (1992). A complaint may properly be dismissed for failure to state a claim when it appears certain "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). Our review of an allowed motion to dismiss is de novo. *Eigerman* v. *Putnam Invs., Inc.*, 66 Mass. App. Ct. 222, 225, *S.C.*, 450 Mass. 281 (2007).

The allowance of a motion for judgment on the pleadings is governed by Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974), which

---

[4]Okerman petitioned, pursuant to G. L. c. 231, § 118, first par., for interlocutory review of the dismissed wage act claim against Augustin. On July 26, 2002, a single justice of this court denied the petition.

provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rule 12(c) effectively functions as a " 'motion to dismiss . . . [that] argues that the complaint fails to state a claim upon which relief can be granted.' *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002), quoting from Smith & Zobel, Rules Practice § 12.16 (1974)." *Ritchie* v. *Department of State Police*, 60 Mass. App. Ct. 655, 659 (2004). Our review of an allowed rule 12(c) motion also is de novo. See *Boston Water & Sewer Commn.* v. *Commonwealth*, 64 Mass. App. Ct. 611, 614 (2005).

The wage act appears in a portion of G. L. c. 149 subtitled "weekly payment of wages." It requires employers to pay employees in a timely fashion, according to the parameters set out in the statute. Despite its subtitle, "nothing in the weekly wage law itself requires the weekly payment of wages." *Wiedmann* v. *The Bradford Group, Inc.*, 444 Mass. 698, 703-704 (2005) (*Wiedmann*). Indeed, "certain employees may be paid at other intervals, including monthly."[5] *DeSantis* v. *Commonwealth Energy Sys.*, 68 Mass. App. Ct. 759, 767 n.11 (2007). The Supreme Judicial Court has stated that the legislation "in its early form was enacted primarily to prevent unreasonable *detention* of wages" (emphasis in original). *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.*, 340 Mass. 144, 147 (1959). See *Wiedmann, supra* at 703, citing *Boston Police Patrolmen's Assn.* v. *Boston*, 435 Mass. 718, 720 (2002) (clear purpose of wage act is to prevent unreasonable detention of wages).

The third paragraph of the wage act states that the statute "shall apply, so far as apt, to the payment of commissions when the amount of such commissions, less allowable or authorized deductions, has been definitely determined and has become due and payable to such employee, and commissions so determined and due such employees shall be subject to the provisions of section one hundred and fifty."[6] G. L. c. 149, § 148, as appear-

---

[5]For example, an employee who is an "executive" or a "professional," as determined by the Attorney General, may be paid biweekly, semimonthly or, at the employee's election, monthly. G. L. c. 149, § 148, as amended through St. 1996, c. 151, § 426. See *Wiedmann, supra* at 704 n.9.

[6]General Laws c. 149, § 150, creates a private right of action to enforce the wage act, and allows for injunctive relief in addition to any damages incurred. Furthermore, it is within a trial judge's discretion to award treble damages for

ing in St. 1956, c. 259. The Legislature first enacted this paragraph in 1943, and no legislative history exists to shed light on the intent underlying this amendment. See St. 1943, c. 467.

In their pretrial orders, which disposed of Okerman's wage act claims, the motion judges determined that the wage act did not apply to Okerman's commissions because his commissions represented earnings "above and beyond his base salary"; his commissions were "in addition to a healthy salary"; the wage act "was intended to protect wage earners who relied on the payment of their weekly or bi-weekly salary and, in the case of retail [sales] employees, the payment of a regular commission"; and Okerman's "right to commissions were contingent upon the attainment of certain sales goals being reached and therefore are not 'definitely determined' under the [w]age [a]ct."[7] Okerman argues that, with the exception of the "definitely determined" and the "due and payable" requirements (which he satisfies), the other restrictions have been improperly engrafted onto the statute. We agree.

"Where the language of a statute is plain, it is 'the sole function of the courts . . . to enforce it according to its terms.' " *D'Avella* v. *McGonigle*, 429 Mass. 820, 822-823 (1999), quoting from *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Util.*, 410 Mass. 686, 690 (1991). By its terms, the language of the wage act regarding commissions applies broadly, and is restricted in its application only by the requirements that the commissions be "definitely determined" and "due and payable." See G. L. c. 149, § 148. As discussed below, the motion judges improperly restricted the scope of the wage act.

Commissions often are earned in addition to a base salary, and in the absence of a statutory definition of the term "commission," we will give the term its ordinary meaning, see *Anderson St. Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004), "consonant with sound reason and common sense," *DiGiacomo* v. *Metropolitan Property & Cas. Ins. Co.*, 66 Mass. App. Ct. 343, 346 (2006).

---

any loss of wages and other benefits, and attorney's fees and costs. See *Wiedmann, supra* at 710.

[7]In support of their orders, the motion judges relied on a series of decisions from the Superior Court and the United States District Court for the District of Massachusetts that imposed limits on the scope of the wage act.

To exclude from the wage act commissions that are "above and beyond" an employee's base salary effectively would vitiate the entire paragraph in the wage act addressing commissions. Similarly, the paragraph would prove meaningless if commissions contingent upon another event were excepted. Virtually all commissions are subject to a contingency, such as meeting a sales quota. The Legislature employed no language that supports a limitation on how commissions are earned. Indeed, the plain language of the paragraph portends otherwise.

We also find no support for VA's suggestion that the application of the wage act may be validly confined to employees who earn less than a "healthy" salary, or to those who rely on their weekly wages for their day-to-day existence. See Moriearty, Adkins, Rubin, & Jackson, Employment Law §§ 14.2-14.3 (2d ed. 2003) (plain language of wage act does not limit its application to employees who depend on commission income for daily existence; trial court decisions finding wage act "inapplicable to highly paid salaried employees are not well grounded in the statutory language"). "The trouble with [VA's] suggestion is that it requires us to add words to the statute that the Legislature did not see fit to put there. This we may not do . . . ." *Cooney* v. *Compass Group Foodservice*, ante 632, 638 (2007). "Where 'the language of the statute is clear, it is the function of the judiciary to apply it, not amend it.' " *Ibid.*, quoting from *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999). In fact, in the fourth paragraph of the wage act,[8] where the Legislature saw fit to exclude certain types of employees from the wage act's protection, it did not place among the excluded those who are highly compensated. See *Commissioner of Correction* v. *Superior Ct. Dept. of the Trial Ct.*, 446 Mass. 123, 126 (2006) ("We do not read into the statute a provision which

---

[8]The fourth paragraph of § 148, as appearing in St. 1956, c. 259, states:

"This section shall not apply to an employee of a hospital which is supported in part by contributions from the commonwealth or from any city or town, nor to an employee of an incorporated hospital which provides treatment to patients free of charge, or which is conducted as a public charity, unless such employee requests such hospital to pay him weekly. This section shall not apply to an employee of a co-operative association if he is a shareholder therein, unless he requests such association to pay him weekly, nor to casual employees as hereinbefore defined employed by the commonwealth or by any county, city or town."

the Legislature did not see fit to put there, nor add words that the Legislature had an option to, but chose not to include").

By its terms, the wage act applies to "executive, administrative or professional" employees. See G. L. c. 149, § 148, as amended through St. 1996, c. 151, § 426. Application of the wage act is not dependent on the amount of an employee's earnings; to the contrary, it has been applied both to highly paid professionals and to lower income wage earners alike.[9] See, e.g., *Wiedmann*, 444 Mass. at 701; *DeSantis* v. *Commonwealth Energy Sys.*, 68 Mass. App. Ct. at 761-762. Furthermore, without explicit legislative guidance, ad hoc judicial determinations of what constitutes "a healthy salary" to push a plaintiff outside of the wage act's purview undoubtedly will lead to arbitrary results.

In support of its position, VA relies on *Commonwealth* v. *Savage*, 31 Mass. App. Ct. 714, 716-718 (1991), which construed the wage act. In *Savage*, we determined that a real estate broker, who was essentially an independent contractor with no base salary whatsoever, was not covered under the statute. *Ibid.* But see *DeSantis* v. *Commonwealth Energy Sys.*, *supra* at 766-769 (applying wage act to employee who earned only commissions). VA does not challenge Okerman's status as an employee within the definition of the wage act, that commissions are protected by the wage act, or that Okerman obtained the approval of the Attorney General to bring a private cause of action. See G. L. c. 149, §§ 148, 150. Rather, VA mistakenly finds support in a portion of dictum from *Savage* where, in reference to the title of the act (particularly the word "weekly"), we inferred "a Legislative purpose to assist employees who would ordinarily be paid on a weekly basis, such as retail salespeople, and for whom commissions constitute a significant part of weekly income." *Commonwealth* v. *Savage*, *supra* at 716. However, the Supreme Judi-

---

[9]Notably, the commissions amendment to the wage act was added in 1943, see St. 1943, c. 467, and a private right of action, including provision for treble damages and attorney's fees and costs, was added to the statute in 1993, see St. 1993, c. 110, § 182. Therefore, despite any original intent of the statute as a means to provide compensation to aggrieved weekly earners, one may now discern a legislative intent to apply the benefits of the statute to current-day employees as defined in the statute, including executives and professionals earning a substantial base salary plus commissions.

cial Court later said of the *Savage* decision that "[a]lthough the *Savage* court inferred from the title of the weekly wage law that it applied to commissions that were paid on a weekly basis, nothing in the weekly wage law itself requires the weekly payment of wages." *Wiedmann, supra* at 703-704.[10] Rather, the wage act establishes different deadlines for the payment of wages to different types of employees. *Id.* at 704. Because Okerman is not an independent contractor (as was the employee in *Savage*), and because the Supreme Judicial Court has determined that the wage act applies more broadly than *Savage* suggested, the case offers VA no assistance.

To the extent that *Savage*'s discussion of the language relevant to commissions in the wage act has been read to permit other restrictions to be added to § 148, that reading is incorrect. Cf. *Prozinski* v. *Northeast Real Estate Servs., LLC*, 59 Mass. App. Ct. 599, 603-604 (2003) (court would not read into wage act protection against retention of severance pay where plain language of wage act did not include it); *Newton* v. *Commissioner of the Dept. of Youth Servs.*, 62 Mass. App. Ct. 343, 344-347 (2004) (declining to require plaintiffs to pursue additional administrative remedies not mandated in wage act itself, which instead provides independent and distinct cause of action).

Similarly, in the absence of legislative guidance, we decline to read into the phrase "so far as apt" judicial license to impose additional hurdles to a cause of action brought under the commissions paragraph in the wage act. Rather, we read the phrase in question as noting that for commissions to qualify under the wage act, they must meet the criteria the Legislature chose to express, i.e., they must be "definitely determined" and "due and payable."[11] See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001)

---

[10]In *Wiedmann*, the Supreme Judicial Court applied the commissions paragraph of the wage act to a professional earner. Although the parties in *Wiedmann* did not dispute the applicability of the wage act to the employee's commissions, the court cited approvingly to a United States District Court for the District of Massachusetts case rejecting a claim, on a motion to dismiss, that the wage act applies only to the weekly payment of commissions. See *id.* at 704, citing *Barthel* v. *One Community, Inc.*, 233 F. Supp. 2d 125, 126-127 (D. Mass. 2002).

[11]One can imagine sound public policy reasons to support the restrictions that have been read into the wage act and employed below. However, whether,

("statutory language should be given effect consistent with its plain meaning").

Finally, the motion judges determined that Okerman failed to properly plead that his commissions were "definitely determined" as required by the statute. We disagree. In *Wiedmann, supra* at 708, the Supreme Judicial Court clarified that to be definitely determined, a commission must be "arithmetically determinable," taking into account the "applicable formulas and deductions" and the "total from which deductions would be taken." Okerman set out in his complaint the applicable commission plan and his terms of employment, detailing the ways in which his commissions were calculated as a percentage of revenue. He also set out the revenue he brought into VA and the consequent commissions he was due. He claimed that those commissions were wrongfully withheld from him. Okerman therefore pleaded facts which, if proved true at trial, would satisfy the requirement that commissions be "arithmetically determinable."[12] See *ibid.* See also *Barthel* v. *One Community, Inc.,* 233 F. Supp. 2d 125, 126-127 (D. Mass. 2002).

*Breach of contract claim.* We review a grant of summary judgment to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Miller* v. *Mooney,* 431 Mass. 57, 60 (2000), quoting from *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). The entry of summary judgment will be upheld when there are no genuine issues of material fact

as a matter of public policy, the application of the wage act should be so limited is better left to the elected members of our Legislature. See *St. Germaine* v. *Pendergast,* 416 Mass. 698, 703 (1993) (judiciary is not permitted to evaluate whether "statute is wise or efficient"); *Brum* v. *Dartmouth,* 44 Mass. App. Ct. 318, 329 (1998) (Kass, J., dissenting), *S.C.,* 428 Mass. 684 (1999) ("Within only constitutional limits, it is the task of the Legislature to resolve . . . public policy questions").

[12]VA maintains that Okerman's commissions cannot qualify as "definitely determined" because the parties disagree about which rate is to be applied for calculation purposes. The essential flaw in this argument is that Okerman's wage act claims were dismissed, and our review of those claims require that we consider only the well-pleaded allegations in the complaint, treating those allegations as true. See *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.,* 413 Mass. at 584. VA is free to raise this issue in any further proceedings that may occur.

and the nonmoving party "has no reasonable expectation of proving an essential element of its case." *Miller* v. *Mooney, supra.* The nonmoving party's failure to prove an essential element of its case "renders all other facts immaterial" and mandates summary judgment in favor of the moving party. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991), citing *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986).

Here, on VA's motion for summary judgment, the second motion judge determined that each new variable compensation plan represented a mutually agreed-upon contract modification, and that no material facts relevant to this claim remained in dispute. Okerman argues on appeal that a dispute about the material issue of mutual assent should have precluded the grant of summary judgment. We disagree.

A valid contract modification requires mutual assent and consideration. See *Gishen* v. *Dura Corp.*, 362 Mass. 177, 182-183 (1972). Assent in this context can be inferred by a party's conduct. See *A. Leo Nash Steel Corp.* v. *Southern New England Steel Erection Co.*, 9 Mass. App. Ct. 377, 383 (1980). There is no dispute that Okerman knew of the new terms of his employment, signed each and every contract modification, and continued to work for VA in accordance with those new terms. As a matter of law, this constituted sufficient assent to the contract modification notwithstanding his claim that his signature signified only his receipt of the documents. See *Gishen* v. *Dura Corp., supra.* See also *Cochran* v. *Quest Software, Inc.*, 328 F.3d 1, 9-10 (1st Cir. 2003). Therefore, the second motion judge properly granted summary judgment to VA on this claim.

*Evidentiary issue.* Okerman claims that the trial judge erred in excluding certain evidence related to the prospective damages which flowed from the claimed breach of the covenant of good faith and fair dealing. As a procedural matter, Okerman's argument, which fails to cite any relevant authority in support of the claim, does not constitute appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Morgan* v. *Laboratory Corp. of America*, 65 Mass. App. Ct. 816, 821 n.6 (2006) ("The mere assertion of a proposition without citation does not constitute appellate argument"). Thus, we treat the claim as waived.

Even if the claim were not waived, we would find that the trial judge properly exercised her discretion in excluding the evidence in question. "Whether evidence is relevant is a question 'addressed to the sound discretion of the trial judge.' " *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991), quoting from *Commonwealth* v. *Booker*, 386 Mass. 466, 469 (1982). In granting summary judgment to VA on the breach of contract claim, the second motion judge determined that the variable compensation plans were valid contracts, and no breach of any contract occurred. In light of that ruling, with which we agree, Okerman was not entitled to prospective damages with respect to commissions on sales *after* the first variable compensation plan, i.e., the February 8, 2000, plan. See *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004) (covenant of good faith and fair dealing may not be "invoked to create rights and duties not otherwise provided for in the existing contractual relationship"). "There is no breach of the covenant 'so long as neither party injures the rights of [the other] to reap the benefits prescribed by the terms of the contract.' " *Christian* v. *Edelin*, 65 Mass. App. Ct. 776, 780 (2006), quoting from *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, *supra*.

What was left open for resolution at trial was whether VA committed a breach of the covenant of good faith and fair dealing by applying the first modification retroactively to sales made *before* the first variable compensation plan was agreed to and implemented. Therefore, it was not an abuse of discretion for the judge to have excluded the evidence of prospective damages, as that evidence was not relevant to the claimed breach of the covenant. See *Ayash* v. *Dana-Farber Cancer Inst.*, 443 Mass. 367, 387-388, cert. denied sub nom. *Globe Newspaper Co.* v. *Ayash*, 546 U.S. 927 (2005).

*Denial of summary judgment.* Finally, VA argues that the second motion judge erred in denying its motion for summary judgment on Okerman's claim for breach of the covenant of good faith and fair dealing. However, when a motion for summary judgment is denied and the case proceeds to a trial on the merits, the denial of the summary judgment motion may not be reviewed on appeal. See *Johnson* v. *Massachusetts Bay Transp.*

*Authy.*, 418 Mass. 783, 785 (1994). See also *Sullivan* v. *First Mass. Financial Corp.*, 409 Mass. 783, 790-791 (1991); *American Country Ins. Co.* v. *Bernhard Woodwork, Ltd.*, 412 Mass. 734, 739-740 (1992); *Sturbridge* v. *McDowell*, 35 Mass. App. Ct. 924, 926 (1993); *Macksey* v. *Egan*, 36 Mass. App. Ct. 463, 467 n.8 (1994). "The purpose of summary judgment is to bring litigation to an early conclusion without the delay and expense of a trial when no material facts are at issue, and it goes without saying that that purpose cannot be served after the case has gone to trial." *Deerskin Trading Post, Inc.* v. *Spencer Press, Inc.*, 398 Mass. 118, 126 (1986). Therefore, VA's argument in this regard is not properly before us.[13]

4. *Conclusion.* The judgment dismissing Okerman's wage act claim against Augustin is vacated. The judgment on the pleadings dismissing Okerman's wage act claim against VA is also vacated. Those claims are remanded for further proceedings consistent with this opinion. The remaining judgments are affirmed.

*So ordered.*

---

[13]Although VA moved for a directed verdict on the claim of breach of the covenant of good faith and fair dealing, and for judgment notwithstanding the verdict thereafter, it does not properly appeal the denial of those motions. VA's claim that it was error to deny its motion for judgment notwithstanding the verdict, in the closing portion of its brief, unsupported by citation to authority, does not constitute appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).