Lowy, David A., J.
The plaintiffs, Charles Crocker (“Crocker”) and Joseph Barrasso (“Barrasso”) (together “the plaintiffs”), brought this action against defendant Townsend Oil Company (“Townsend”), pur-suanttoG.L.c. 149, §§148, 150 to recover damages for: (1) Townsend’s alleged misclassification of the plaintiffs as independent contractors; (2) violations of the Massachusetts Wage Law; (3) unjust enrichment; and (4) breach of contract and the implied covenant of good faith and fair dealing. On June 18, 2010, the defendant’s unopposed motion for summary judgment was allowed by this Court. Before the court is the plaintiffs’ motion to vacate entry of summary judgment. After a hearing and review of the record, the plaintiffs’ motion to vacate entry of summary judgment is ALLOWED and Townsend’s motion for summary judgment is DENIED.
BACKGROUND
Townsend is a Massachusetts corporation that delivers oil and oil products throughout northeastern Massachusetts. In addition to employing delivery drivers who drive Townsend Oil trucks to deliver oil products, Townsend hires independent contractors to deliver oil products as well. Independent contractors are paid based on the gallons of oil delivered and deliver oil in trucks owned by themselves but labeled “Townsend Oil.” Both employees and independent contractors deliver oil to customers determined by Townsend, at prices set by Townsend.
In the fall of 1997, Crocker began driving an oil delivery truck for Townsend as an independent contractor. Barrasso began driving an oil delivery truck for Townsend as an independent contractor in July 2002. Both plaintiffs initially signed a Contract Carrier Agreement, agreeing to provide fuel delivery services to Townsend as an independent contractor for a certain time period. Several years later, the plaintiffs signed a new contract with Townsend in which the plaintiffs agreed to continue to provide oil fuel delivery services until 2007. In January 2007, Townsend wanted to terminate the employment agreement with Barrasso.[3] Barrasso and Townsend negotiated the terms of termination, which are set forth in a Contract Carrier Termination Agreement. Barrasso was represented by counsel when negotiating Termination Agreement.[4] The Termination Agreement was signed by Townsend and Barrasso on January 30, 2007. Barrasso states that at no point during the negotiation or signing of the Termination Agreement was he aware *534 that he might be considered an employee entitled to Wage Act rights and rights under the Americans with Disabilities Act.
In early 2007, Townsend severely reduced the number of customers that Crocker was serving. Subsequently, Crocker and Townsend negotiated terms of termination and Crocker’s employment relationship with Townsend was terminated. Crocker signed a Termination Agreement on April 15, 2007 which set forth the terms of the termination. Crocker states that at no time during the execution of the Termination Agreement was he aware that he might be an employee entitled to Wage Act rights.
Both of the plaintiffs’ Termination Agreements contained mutual general releases. The release in favor of the defendants provides as follows.
Each of the Carrier and the Operations Manager[5] hereby forever releases, remises and discharges the Company and its shareholders, directors, officers, employees and agents (collectively referred to as the “Townsend Released Parties”) of and from any and all debts, demands, actions,, causes of actions, suits, accounts covenants, contracts, agreements, damages, and any and all claims, demand, obligations and liabilities whatsoever of every name and nature, both in law and in equity (collectively referred to as “Claims”), that either or both of the Carrier and the Operations Manager now have or ever had (or may in the future have, arising out of or in connection with any events occurring on or prior to the date hereof) against any one or more of the Townsend Released Parties, including, without limitation, any Claims arising out of or in connection with the CCC Agreement[6] or the Intended New Agreement. The foregoing release is intended to be a general release or all Claims to the maximum extent permitted by law, whether or not the subject matter of any such Claim has been the subject of a previous claim or threatened claim made by the Carrier and/or the Operations Manager.
On December 18, 2009, the plaintiffs filed their complaint alleging that Townsend violated the Massachusetts Wage Act. Plaintiffs were initially represented in this action by Attorney James W. Simpson, Jr. Simpson filed a motion to withdraw from the case on March 19, 2010, which was allowed after a hearing on May 4,2010. Barrasso informed the Court that he had sought to retain new counsel, but had been unsuccessful. The plaintiffs located present counsel, Attorney Valeriano DiViacchi on May 21, however, it took a few weeks to get copies of the file to him for review and for Diviacchi to research and investigate issues on the case. On June 17, 2010 the defendants filed their motion for summary judgment and on June 18, the unopposed motion for summary judgment was allowed by the Court (Whitehead, J.) with judgment entering on June 24, 2010. On June 28, 2010, Attorney DiViacchi filed a notice of appearance on behalf of the plaintiffs and an emergency motion to stay entry of final judgment or to vacate entry of summary judgment.
DISCUSSION
Pursuant to Mass.R.Civ.P. 60(b) 1 and 6, a court can grant relief from the entry of a final judgment based upon reasons of “mistake, inadvertence, surprise, or excusable neglect” and for “any other reason justifying relief from the operation of the judgment.” The rule provides a procedure for removing the burdens of a judgment where the interest of justice and fairness require relief. Berube v. McKesson Wine and Spirits Co., 7 Mass.App.Ct. 426, 429 (1979). The moving party has the burden of proving that he was justified in failing to avoid mistake or inadvertence. Cullen Enterprises, Inc. v. Massachusetts Property Ins. Underwriting. Ass’n, 399 Mass. 886, 894 (1987).
Generally, the following factors are considered in determining whether to grant relief from judgment for excusable neglect: (1) whether the offending party has acted promptly after entry of judgment to assert a claim for relief; (2) whether there is a showing that the claim sought to be revived has merit; (3) whether the neglectful conduct occurred before trial; (4) whether the neglect was the product of a consciously chosen course of conduct on the part of counsel; (5) whether prejudice has resulted to the other party; and (6) whether error is chargeable to the party’s legal representative rather than to the party himself. Berube, 7 Mass.App.Ct. at 430-31.
The plaintiffs acted promptly, filing a motion to vacate the judgment only four days after judgment was entered. When the Court allowed Attorney Simp son to withdraw, it was aware that the plaintiffs had been searching for new counsel and had thus far been unsuccessful in their search. The plaintiffs argue that this was an average track action allowing for Rule 15 motions until December 13, 2011, discovery until December 8, 2011, Rule 56 motions until February 6, 2012, and disposition by February 12, 2012 and that any neglectful conduct occurred at such an early stage of litigation so as to not prejudice the defendants. Finally, the plaintiffs argue that the material issue on granting relief from judgment is whether they can defeat Townsend’s defense of “release,” thus establishing the merit of their claim.
Townsend argues that the broad release signed by the plaintiffs applies to the claims in this action and therefore the grant of summary judgment was appropriate. The Termination Agreements “forever release[d]” the defendants from any and “all Claims to the maximum extent permitted by law, whether or not the subject matter of any such Claim has been the subject of a previous claim or threatened claim . . .” Townsend argues that it is irrelevant whether the plaintiffs specifically contemplated their current claims when they signed the Termination Agreement. See Eck v. Godbout, 444 Mass. 724, 729 (2005) (broad *535 wording in the release operates to settle all other, unrelated matters, even if they were not specifically in the parties’ minds at the time the release was executed). Additionally, Townsend contends that a Wage Act claim may be released notwithstanding the statutory language. In support of this argument, Townsend relies on Gordon v. Millivision Holdings. LLC, 2005 WL 705110 (Mass. Super. 2005) [19 Mass. L. Rptr. 61], and Powell v. Dassault Systems Enovia Corp., 2009 WL 3176790 (D.Mass. 2009).
The Wage Act mandates the prompt payment of wages to employees. See G.L.c. 149, §148. Included in the statute is a provision stating, ”[n]o person shall by special contract with an employee or by any other means exempt himself from this section or from Section 150.” G.L.c. 149, §148. “The apparent purpose of this provision was to bar employers from inducing their employees to waive or otherwise surrender the protections they are provided under the Wage Act.” Dobin v. Cioview Corp., 2003 WL 22454602 at *5 (Mass.Super. 2003) (Gants, J.) [16 Mass. L. Rptr. 785] (holding that wage deferral agreement was void as contrary to specific language of the Wage Act). The provision is unconditional; it sets forth no circumstances in which such a waiver would be lawful. Id. Viewing the words used in this provision in their usual and ordinary meaning and in light of the statute’s legislative purpose, “it is plain that the Legislature intended to bar any contract between an employer and employee that denied the employee the prompt payment of wages guarantees by the Wage Act.” Id.
Some Massachusetts courts have ruled that a waiver is different from a release and held that the Wage Act does not prohibit releasing those rights after the claim has been established. Gordon, 2005 WL 705110 at *3; see also Powell, 2009 WL 3176790 at *2. The Supreme Judicial Court has not conclusively decided whether the Wage Act prohibits a release of those rights and what factors are required for a valid release of Wage Act claims. In Gordon, the plaintiff and other employees agreed to forego their salary from time to time when the company they worked for was facing financial problems. 2005 WL 705110 at * 1. After the company was acquired by a new company, Gordon was offered employment at the new company with the employment agreement providing a salary increase as well as stock options. Id. The purpose of the stock options was to compensate the former employees who were hired by the new company for the wages owed to them. Id. As part of the new employment agreement, Gordon agreed “to release any claims for compensation that he had against [the new company] and its members, officers, employees, or agents.” Id. at *2. Gordon was later terminated from the new company and filed a claim for unpaid wages stemming from his employment at the old company.
The court initially noted that broad releases are routinely enforced and an unambiguous and comprehensive release will be enforced as drafted, except for fraud or duress. Id., citing Cormier v. Central Mass. Chapter of the Nat’l Safety Council, 416 Mass. 286, 288 (1993). The court agreed .with Justice Gants’ decision in Dobin that a waiver is unlawful, but held that the law does not prohibit releasing Wage Act rights after the claim has been established. In other words, the court stated, “there is no proscription in the statute to releasing an acknowledged wage claim, particularly when it is to the benefit of the employee.” Gordon, 2005 WL 705110 at *3. The court also noted that in order to resolve the claim short of trial a release would be necessary. Id.
Similarly, in Powell, the plaintiff signed a Separation Agreement and Release when he was discharged as an employee providing that payments made to him were made as a “complete!] settlement” of “all claims” regarding his “employment,” including “all claims for wages, salary, commissions . . . [and] bonuses.” 2009 WL 3176790 at *2. The court in Powell found the reasoning of Gordon persuasive and determined the language of the Wage Act prohibited an employer from prospectively exempting himself from the requirements of the Wage Act, but did not prohibit an employee from releasing an acknowledged wage claim. Id.
The decisions in both Gordon and Powell are premised on a recognized employee-employer relationship. Both cases explicitly refer to a release of an acknowledged wage claim. Here, by contrast, there is no established employee-employer relationship between the plaintiffs and Townsend. The plaintiffs assert that whether the Termination Agreement is a waiver or a release is irrelevant; Townsend’s misclassification of them as independent contractors is itself a violation of §148, not a release of it. Because of the alleged mis-classification, the plaintiffs could not have released an acknowledged wage claim; they were not aware of any rights they may have been entitled to. The Termination Agreement states that it is intended to be a general release to the extent permitted by law. Given the plain language of the Wage Act that “[n]o person shall by special contract with an employee or by any other means exempt himself from the protection of the Wage Act, the unconditional nature of the provision, and that the Supreme Judicial Court has yet to determine under what conditions, if any, a person may release such a claim, this Court will not craft an exception to the statutory language. ’’Where the language of a statute is plain, it is ‘the sole function of the courts ... to enforce it according to its terms.’" D’Avella v. McGonigle, 429 Mass. 820, 822-23 (1999), quoting Boston Neighborhood Taxi Assn. v. Department of Pub. Util., 410 Mass. 686, 690 (1991).
This textualist and coverage-expanding approach is supported by the decision in Okerman v. VA Software Corp., 69 Mass.App.Ct. 771 (2007). In Okerman, the Appeals Court vacated the dismissal of the plaintiffs Wage Act claims on the ground that his commissions *536 were sufficiently definite to qualify as wages. The court rejected the judicial narrowing of the Wage Act’s coverage based on policy concerns: “One can imagine sound public policy reasons to support the restrictions that have been read into the wage act and employed below. However, whether, as a matter of public policy, the application of the wage act should be so limited is better left to the elected members of our Legislature.” Id. at 779, fn. 11. The courts that have allowed a release from Wage Act rights have allowed so only when the release was of acknowledged wage claims. This is not the case here.
The clear legislative purpose of G.L. c. 149, § 148 was to prevent employers from inducing their employees to surrender the protections they are provided under the Wage Act. To allow employers to induce employees to waive their Wage Act protections by possibly mis-classifying them as independent contractors is contrary to the purpose of the Wage Act. The plaintiffs are entitled to relief under Mass.R.Civ.P. 60(b)(1) where they acted expeditiously in filing their motion, any neglectful conduct occurred at such an early stage of litigation so as to not prejudice the defendants, and the plaintiffs advanced a meritorious defense Townsend’s motion for summary judgment.
ORDER
Accordingly, the plaintiffs’ motion to vacate entry of summary judgment is ALLOWED and Townsend’s motion for summary judgment is DENIED.

 Barrasso alleges that Townsend wanted to terminate the agreement because Barrasso was diagnosed with multiple sclerosis.

 It is unclear from the summary judgment record whether Crocker was also represented by counsel when he terminated his relationship with Townsend.

 The reference to Operations Manager appears in the Barrasso Termination Agreement. The Crocker Termination Agreement references “the Principal” instead of an operations manager.

 The “CCC Agreement” is defined in the release as the Current Contract Carrier Agreement.